CASE 103—ACTION FOR AN INJUNCTION INVOLVING THE QUESTION OF A LICENSE TO PRACTICE OSTEOPATHY—JUNE 20.

## Nelson v. State Board of Health.

APPEAL FROM JEFFERSON CIRCUIT COURT, LAW AND EQUITY DIVISION.

JUDGMENT FOR DEFENDANT AND PLAINTIFF APPEALS. REVERSED.

PHYSICIANS—MEDICAL COLLEGE—LICENSE TO PRACTICE OSTEOPATHY.

Held: 1. A college which teaches osteopathy, a method of treating diseases by kneading or manipulation of the body, and does not teach surgery, bacteriology, materia medica, or therapeutics, is not a "medical college," within the meaning of Kentucky Statutes, section 2613, which requires the State Board of Health to issue a certificate to practice medicine to any reputable physician who has a diploma from a reputable medical college chartered under the laws of this State, or from a reputable and legally chartered medical college of some other State or country, indorsed as such by the State Board of Health.

2. One who practices osteopathy, not using medicine or surgical applicances, does not practice medicine, within Kentucky Statute, section 2613, which declares that "authority to practice medicine" shall be a certificate from the State Board of Health, though Ibid, section 2618, provides that "to open an office for such purpose, or to announce to the public in any way a readiness to treat the sick or afflicted, shall be deemed to engage in the practice of medicine within the meaning of this act," as the act of which these sections form a part, when considered as a whole, shows that the Legislature only intended to regulate the practice of medicine by physicians and surgeons; and therefore a certificate from the State Board of Health is not necessary to authorize one to practice osteopathy.

3. The State Board of Health will be enjoined from interfering with or molesting one in the practice of his profession as an osteopath.

Nelson v. State Board of Health.

E. E. McKAY, ATTORNEY FOR APPELLANT.

1. The plea of the defendant that notice had been given to plaintiff to
   attend a certain meeting of defendant, for examination is no de-
   fense here.

2. There is no law authorizing such examination of plaintiff for
   any purpose.

3. Sub-section 4 of section 2613 authorizes the examination by the
   board of all applicants for license, who were respectably or
   honorably engaged in the practice of *medicine* in their State prior
   to February 28, 1884. The plaintiff does not belong to that class,
   and consequently no examination could legally be required of
   him.

4. As the examination could in no way off-set plaintiff or his rights,
   it is of no virtue herein and constitutes no defense, and should
   be stricken out.

5. We argue that where an inquiry is to be made involving questions
   of law as well as of fact, and which affects a legal right, neces-
   sarily implies a decision upon the facts and the law upon which
   these facts depend.

AUTHORITIES CITED—Jones v. Com., 10 Bush, 749; Garman v. Lucket,
   6 B. M., 160; Lowe v. Com. 3 Met., 233. Page v. Hardin, 8 B.
   M., 672; Burket v. McCarty, 10 Bush, 758; Dillon on Mun. Cor-
   porations, 143; Slaughter House Case, 16 Wal. U. S. R., 36; Toledo
   R. R. Co. v. Jacksonville, 67 Ill., 37; Driscoll & Rice v. Com.
   93 Ky., 393.

KOHN, BAIRD AND SPINDLE FOR APPELLEE.

   (No brief in record.)

OPINION OF THE COURT BY JUDGE HOBSON—REVERSING.

   Appellant, Harry Nelson, a citizen of this State, filed
his petition in equity in the court below in which he al-
leged that, after he had taken a regular course of studies
at the American School of Osteopathy at Kirksville, Mo.,
for a term of years, he became a graduate thereof on Sep-
tember 15, 1897; that since that date he has been prac-
ticing this system of healing for his support to the great
comfort and relief of disease and sickness, having adopt-
ed it as his vocation in life; that osteopathy is a perfect
system, having the approval of skilled and scientific men,

and schools and colleges in which its doctrines are taught; that appellee was about to have him arrested for practicing osteopathy, or prosecute him therefor, under the act entitled "An act to protect citizens of this Commonwealth from empiricism," approved April 10, 1893, and the amendment thereto approved March 18, 1898; that this act is in violation of the bill of rights, and is unconstitutional, or, if valid, that under it appellee is discriminating against the system of medicine known as "osteopathy," refusing to recognize his diploma, or to give him a certificate; that the school referred to at which he graduated is a reputable medical college chartered by the laws of Missouri, with a large body of learned professors, and a large patronage of pupils, and as such is entitled to be recognized and indorsed by the appellee. He prayed that appellee be enjoined from molesting him in his business or profession as an osteopath, or pursuing him criminally therefor, and, if he was not entitled to this relief, then that a writ of mandamus be awarded him compelling appellee to recognize and indorse the American College of Osteopathy at Kirksville, Mo., and issue him a certificate entitling him to follow his calling in this State. Appellee answered, denying the allegations of the petition, and pleading specially that the school referred to was not a reputable medical college, and that plaintiff, as a graduate of it, was not entitled to a certificate from it. On final hearing the court below dismissed the action, refusing the complainant any relief, and the correctness of this judgment is the question to be determined on this appeal.

The proof shows that osteopathy is a new method of treating diseases, which is said to have originated with Dr. A. T. Still, of Kirksville, Mo., about the year 1871. He practiced it more or less from that time until about

the year 1890, when he opened a school for the instruction
of others. In 1892 he obtained an imperfect charter for
his school under the laws of Missouri. This was perfect-
ed in 1894 by a charter in regular form, under which the
school has since been operating. At the time the proof
was taken in this case there were in attendance at the
school something over 500 scholars from twenty-nine
States of the Union, and several from Canada. In con-
nection with the school was an infirmary, at which from
300 to 500 patients were regularly treated. There were
twelve or thirteen professors in the school. Of these
four were regularly graduated physicians, besides Dr. Still,
who was a surgeon in the army during the Civil War, and
is said to have been a college graduate; but the proof as
to this is not clear. Another of the professors is a fel-
low of the Royal Society of England, and still another
was for many years the circuit judge of that district. The
buildings of the school are shown to be commodious, and
suitable for its purposes. While its equipment at first
was meager, it has gradually increased from time to time
until now it would seem in some respects to compare fa-
vorably with other colleges. The patients treated at the
infirmary, as well as those treated by appellant, appear
to have been satisfied with what they received, and many
of them to have been materially benefitted. There are
four or five other colleges of osteopathy, which, with the
one at Kirksville, form an association, and in five States of
the Union osteopathy has been recognized by statute.
The testimony of the witnesses, the character of the pro-
fessors, and the evident sincerity of their statements.
leave no doubt in our minds that the school at Kirksville
is a reputable school of osteopathy; but whether it is a
reputable school of medicine, within the meaning of our

statute, or what are appellant's rights if it is not, are very different questions, depending upon the proper construction of the act itself.   The purpose of the statute, as shown by its title, was to protect the people of this State from empiricism.   Its material provisions are as follows (Kentucky Statutes, sections 2611-2618):

"Section 2611.   It shall be the duty of the county clerk of each county to purchase a book of suitable size, to be known as the 'Medical Register' of the county, and to set apart one full page for the registration of each physician. . . .

"Section 2612.   It shall be unlawful for any person to practice medicine in any of its branches, within the limits of this State, who has not exhibited and registered in the county clerk's office of the county in which he resides his authority for so practicing medicine as herein prescribed, together with his age, address, place of birth and the school or system of medicine to which he professes to belong. . . .

"Section 2613.   Authority to practice medicine shall be a certificate from the State board of health, and said board shall, upon application issue a certificate to any reputable physician who is practicing, or who desires to begin the practice of medicine in this State, who possesses any of the following qualification: (1)  A diploma from a reputable medical college legally chartered under the laws of this State.   (2) A diploma from a reputable and legally chartered medical college of some other State or country, indorsed as such by the State board of health. (3) Satisfactory evidence from the person claiming the same that such person was reputably and honorably engaged in the practice of medicine in this State prior to February 23, 1864.   (4) Satisfactory evidence from any

person who was reputably and honorably engaged in the practice of medicine in this State prior to February 23, 1884, who has passed a satisfactory practical examination before said board. . . .

"Section 2616.   Nothing in this law shall be so construed as to discriminate against any peculiar school system of medicine, or to prohibit women from practicing midwifery, or to prohibit gratuitous services in case of emergency; nor shall this law apply to commissioned surgeons of the United States army, navy, or marine hospital service, or to legally qualified physicians of another State called to see a particular case or family, but who does not open an office or appoint any place in this State where he or she may meet patients or receive calls.

"Section 2618.   Any person living in this State or coming into this State, who shall practice medicine, or attempt to practice medicine in any of its branches, or who shall treat or attempt to treat any sick or afflicted person by any system or method whatsoever, for reward or compensation without first complying with the provisions of this law shall, upon conviction thereof, be fined fifty dollars, and upon each and every subsequent conviction shall be fined one hundred dollars and imprisoned thirty days, or either or both, in the discretion of the court or jury trying the case; and in no case where any provision of this law has been violated shall the person so violating be entitled to receive any compensation for the services rendered.   To open an office for such purpose or to announce to the public in any way a readiness to treat the sick or afflicted shall be deemed to engage in the practice of medicine within the meaning of this act."

Empiricism is defined as "a practice of medicine founded on mere experience without the aid of science or the knowl-

edge of principles." The above act is therefore "an act to protect the people of this Commonwealth from the practice of medicine founded on mere experience, without the aid of science, or a knowledge of principles." To secure this, it requires a medical register to be kept by the county clerk of each county, and makes it unlawful for any person to practice medicine in any of its branches within the limits of the State until he has registered in the county of his residence. Authority to practice medicine under the statute can only be conferred by a certificate from the State board of health issued to a reputable physician having a diploma from a reputable medical college legally chartered under the laws of this State, or, if chartered under the laws of some other State or country, indorsed as such by the State board of health. Persons engaged in the practice reputably and honorably prior to February 23, 1864, are, on proof of this fact, entitled to a certificate, and persons engaged in the practice reputably and honorably prior to February 23, 1884, may be given a certificate after a satisfactory examination before the board; but there is no authority in the act for the board to examine any one who was not engaged in the practice prior to February 23, 1884, or to issue a certificate to such a person, unless he is a reputable physician having a diploma from a reputable college; and without such a certificate it is made unlawful for any person to practice medicine in any of its branches within the limits of this State. The appellant, therefore, having graduated in the year 1897, and not being a practitioner of medicine in this State prior to February 23, 1884, could not be examined before the board of health, nor was he entitled to a certificate from it unless upon the ground that he held a diploma from a reputable and legally chartered med-

ical college of the State of Missouri. It is contended for the appellee that the law has conferred upon it the sole power to determine whether a particular college is reputable, and should be indorsed as such by it. It is contended for appellant that appellee, by the express terms of the statute, is limited in power, and can not discriminate against any peculiar school or system of medicine. It is urged with force that, if the refusal to indorse the school is essentially based on the system it teaches, rather than on the sufficiency of its instructions, the action of the board is without authority, and may be restrained by the courts.

This seems to us to be the true construction of the statute, and in a case where it was clear from the evidence that a discrimination had been made against a system of medicine we should not hesitate to hold that the board had exceeded its power. But, under the evidence, we are not inclined to think that the school referred to is a reputable medical college, within the meaning of the statute. The terms "physician," "practice medicine," and "medical college," used in the act, have a well-defined popular meaning, and were used, we think, by the Legislature, in this sense. The term "physician" refers to those exercising the calling of treating the sick by medical agencies, as commonly practiced throughout the State at the time the act was passed. The term "medical college" refers to those schools of learning teaching medicine in its different branches, at which physicians at that time were educated, or schools of that character organized since. At such an institution an essential part of the instruction was in teaching the nature and effects of medicines, how to compound and administer them, and for what maladies they were to be used. In such insti-

tutaons also surgery is an essential part of the instruction. Without a knowledge of surgery or medical agencies, no person would be deemed equipped to practice medicine by any medical college; for these things lie at the base of the instruction given in such schools. Osteopathy teaches neither therapeutics, materia medica, nor surgery. Bacteriology is also ignored by it. As we understand the record, it relies entirely on manipulation of the body for the cure of diseases. Its theory is that a large number of ailments are due to irregular nerve action, and that by stimulating or repressing the nerve centers by manipulation they enable nature herself to right the evil. It administers no drugs; it uses no knife. It does not profess to cure all diseases. When a case is presented requiring surgery or medication, the osteopath gives way to the physician. Faith cure or magnetism has no place in the system. It relies wholly upon manipulation aiding the *vis medicatrix naturae.* The main things taught in the school are physiology, anatomy, and the treatment of diseases by manipulation. The system is new, and, of necessity, imperfect as yet, but, if we may credit the evidence in this record, is often efficacious where the regular practice is ineffective. Still a school which teaches neither surgery, bacteriology, materia medica, nor therapeutics can not be regarded as a medical college within the popular meaning of those terms as understood in this State when the act in question was passed.

Having reached the conclusion that the school at which appellant graduated is not a medical college within the meaning of the statute, it remains for us to inquire whether the act applies to him at all. The subject-matter in the minds of the Legislature in passing the act was to protect the people of the State from the practice of medicine

founded merely on experience without scientific knowledge. To effect this it allows only reputable physicians holding a diploma from a regular or reputable school to practice medicine, with an exception in favor of those then already long engaged in the practice. If the act applies to appellant, he can in no case practice his system in this State; for, however well qualified he may be, he can not be examined for license as a physician, and he could not, without abandoning his practice as an osteopath, obtain a diploma from a medical college. If the statute applies to him, it also applies to trained nurses, and all others of that class, who, for compensation, administer to the wants of the sick. The result of such a construction of the statute would be to compel every one, whether willing or unwilling, to employ a registered physician to care for him when he is sick, or to trust himself entirely to gratuitous services, however much he might prefer skillful nursing to medical treatment. It is doubtful if the Legislature has the right under the Constitution thus to restrict the free choice of the citizen in a matter concerning only himself and not the people at large. Taking the statute as a whole, we do not think that this was within the legislative intent, or that the act was designed to do more than regulate the practice of medicine by physicians and surgeons.

After it was first passed in this State, there was a separate statute passed applicable to dentists, and still another for pharmacists; thus showing that the Legislature intended the act before us to apply only to physicians. Until these acts were passed, there were no requirements established by law for the practice of medicine in this State, and in undertaking to regulate the practice of medicine it should not be presumed that the

Legislature intended to interfere with trained nurses or others, who, for compensation, attended on the sick without undertaking to prescribe medicine or to follow the calling of a physician; for such persons are not within the spirit of the act, and could not well have been in the mind of the Legislature when enacting it. A statute precisely similar to ours in purpose was passed in the State of of New York. In Smith v. Lane, 24 Hun., 632, a person treating disease like appellant was charged with violating the act. The court held him not within the statute. Among other things, the court said: "The practice of medicine is a pursuit very generally known and understood, and so, also, that of surgery. The former includes the application and use of medicines and drugs for the purpose of curing, mitigating, or alleviating bodily diseases, while the functions of the latter are limited to manual operations, usually performed by surgical instruments or appliances. It was entirely proper for the Legislature, by means of this chapter, to prescribe the qualification of the persons who might be intrusted with the performance of these very important duties. The health and safety of society could be maintained and protected in no other manner. To allow incompetent or unqualified persons to administer or apply medical agents, or to perform surgical operations, would be highly dangerous to the health as well as the lives of the persons who might be operated upon, and there is reason to believe that lasting and serious injuries, as well as the loss of life, have been produced by the improper use of medical agents and surgical instruments or appliances. It was the purpose and object of the Legislature by this act to prevent a continuance of deleterious practices of this nature, and to confine the use of medicines and the operations of sur-

gery to a class of persons who, upon examination, should
be found competent and qualified to follow these profes-
sional pursuits.  No such danger could possibly arise from
the treatment to which the plaintiff's occupation was con-
fined.

While it might be no benefit, it could hardly be
possible that it could result in harm or injury. . . .
His system of practice was rather that of nursing than of
either medicine or surgery. . . . He neither gave nor
applied drugs or medicines, nor used surgical instruments.
He was outside of the limits of both professions, and neith-
er of the schools or societies mentioned in the act had
jurisdiction over him." A statute very similar to ours
was passed in the State of Ohio, and in State v. Liffring,
55 N. E., 168 (46 L. R. A., 334), the question was pre-
sented to the supreme court of the State whether an os-
teopath was included in the statute.  It was held that he
was not.  The court said: "The obvious purpose of the
act under consideration is to secure to those who believe
in the efficacy of medicines the ministration of educated
men, thus preventing fraud and imposition, and to protect
society from the evils which result from the administra-
tion of potent drugs by the ignorant and unskillful.  The
purpose of the act is accurately indicated by its title to be
'to regulate the practice of medicine.'  No provision of
the act indicates an intention on the part of the Legisla-
ture that those who do not propose to practice medicine
shall graduate from a college of medicine, or otherwise
become learned in its use.  Without such knowledge, no
one is entitled to a certificate from the board of examina-
tion.

The result of the view urged in support of the excep-
tion is that by this act the General Assembly has attempt-

ed to determine a question of science, and control the personal conduct of the citizen without regard to his opinion; and this is a matter in which the public is in no wise concerned.     Such legislation   would be an   astonishing denial of the commonly accepted views touching the right to personal opinion and conduct, which does not invade the right of others."   A similar ruling was made in Rhode Island.   State v. Mylod, 40 Atl., 753.   While the phraseology of our statute is in some respects different from that before the court in either of these cases, the purpose of the act is plainly the same, and we think the same construction should be adopted.   The thing in the mind of the Legislature, and declared by the act to be unlawful, is "for   any  person  to  practice  medicine  in  any  of  its branches within the limits of this State" without a certificate from the State board of health.   Section 2612.

And as the board is only authorized to issue a certificate to ' a  reputable  physician  having  a  diploma  from a   reputable  medical   college,   and   no   discrimination   is   allowed   against   any   peculiar   school   or system  of  medicine,  the  penalties  provided  by  the last   section   of   the   act   must   be   limited   to   that which is referred to in the title and previous sections,— the practice of medicine in some of its branches in this State; and the words, "who shall practice medicine or attempt to practice medicine in any of its branches or who shall treat or attempt to treat any sick or afflicted person by any system or method whatsoever, for reward or compensation, without first complying with the provisions of this law," must be held to refer to physicians or surgeons belonging to some school or system of medicine practicing or desiring to practice medicine in this State, as provided in the preceding section; otherwise, this section

would be made to include those not provided for in the preceding section, and the effect of the act would be not to protect the people of this State from the unscientific practice of medicine, but to deny to the sick all ministrations not gratuitous, unless by registered physicians. Thus construed, the act would be for the protection rather of the doctors of the State than of the people; and, in view of the general custom before and since this act of hiring nurses and others to care for the sick, we are of the opinion that such a construction would do violence to the actual intention of the Legislature. Appellant is in no proper sense a physician or surgeon. He does not practice medicine. He is rather on the plane of a trained nurse. If by kneading and manipulating the body of the patient he can give relief from suffering, we see no reason why he should not be paid for his labor as other laborers. Services in kneading and manipulating the body are no more the practice of medicine than services in bathing a patient to allay his fever or the inflammation of a wound. Appellant may not prescribe or administer medicine or perform surgery, but, so long as he confines himself to osteopathy, kneading and manipulating the body, without the use of medicine or surgical appliances, he violates no law, and appellee should not molest him. On the return of the case the court below will enter judgment granting appellant a perpetual injunction restraining appellee from interfering with him or prosecuting him for the practice of osteopathy as above indicated. Judgment reversed, and cause remanded for further proceedings not inconsistent with this opinion.

Petition for re-hearing filed by appellee and overruled, Judge DuRelle dissenting.