GARDNER T. SWARTS, Complainant, *vs.* FRANK SIVENY.

DECEMBER 6, 1912.

PRESENT: Dubois, C. J., Johnson, Parkhurst, Sweetland, and Vincent, JJ.

(1) *Practice of Medicine.*

Upon a complaint charging defendant with the practice of medicine in violation of Gen. Laws, 1909, cap. 193, § 8, it appeared that defendant had caused to be inscribed on his door "Dr. X. Chiropractor;" that he exposed literature designed to give information as to the benefits to be derived from such treatment, resulting in the adjustment and removal of the causes of a large number of specified diseases and claimed to be able to analyze and locate the physical cause of disease, and to be capable of applying the proper remedy therefor.

*Held,* that taking the phrase "practice medicine" in its ordinary acceptation and popular meaning, as related to the art of preventing, curing or alleviating disease, consisting in the discovery of the cause and nature of disease and the administration of remedies or the prescribing of treatment therefor, defendant was within the terms of the statute, as having undertaken by a certain method of treatment to cure or alleviate disease or pain, and exacted compensation for such treatment.

*(2) Practice of Medicine. Criminal Complaint.*

Criminal complaint under Gen. Laws, 1909, cap. 193, § 8:—

*Held*, to sufficiently charge defendant with holding himself out as a practioner of medicine, versed in and willing to practice the art of preventing, curing and alleviating disease and pain for a reward or fee, without the authorization of the State Board of Health.

*(3) Criminal Complaint. Evidence.*

The mental attitude of a complainant in making a criminal complaint, for violation of a statute, is immaterial.

*(4) Practice of Medicine. Evidence.*

Upon a criminal complaint charging the practice of medicine in violation of the statute, evidence as to the benefits derived from the treatment given by defendant is immaterial and properly excluded.

*(5) Practice of Medicine. Evidence.*

Upon a criminal complaint charging the practice of medicine in violation of the statute, evidence offered by the State consisting of books and pamphlets descriptive of the treatment employed by defendant and its advantages, relating to schools and methods referred to by defendant with approval, in his testimony, is admissible.

*(6) Practice of Medicine.*

Upon a criminal complaint charging the practice of medicine in violation of the statute, request to charge that if the jury found that a chiropractic was not a practitioner of medicine and surgery, they should find for defendant, was properly refused, since the issue was whether defendant upon the evidence was guilty of practicing medicine without authority.

CRIMINAL COMPLAINT. Heard on exceptions of defendant and overruled.

VINCENT, J. The defendant was tried and found guilty in the District Court of the Sixth Judicial District and in the Superior Court in Providence County, on the complaint of Gardner T. Swarts, Secretary of the State Board of Health, which alleged that "In said county, on the first day of January, A. D. 1910, and from that day to the day of the date of this complaint, with force and arms, Frank Siveny, alias John Doe, of said Providence, laborer, did open an office with intent to practice medicine and did hold himself out to the public as a practitioner of medicine by appending to his name the title of Chiropractor, and by representing that he was versed in and willing to practice for compensation

the art of preventing, curing and alleviating disease and pain, and did attempt to and did practice medicine and surgery after having received therefor, and with intent to receive therefor directly and indirectly a bonus, gift and compensation; said defendant not being then and there legally authorized to practice medicine within this State, and not being then and there registered to practice medicine according to law."

The scope of the complaint is to charge the defendant with holding himself out as a practitioner of medicine in violation of Chapter 193, Section 8 of the General Laws of Rhode Island, without having a license from the State Board of Health.

After a verdict of guilty in the Superior Court, the defendant filed his motion for a new trial on the ground that such verdict was against the law and the evidence. This motion was denied by the justice presiding at the trial, whereupon the defendant filed his bill of exceptions. These exceptions cover the refusal of the court to quash the complaint and warrant; the denial of a motion to direct a verdict; the refusal to instruct the jury as requested and the rulings of the court as to the admission and exclusion of testimony.

The necessity for some legislation designed to regulate the practice of medicine and surgery has been very generally recognized. Legislatures in many of the states have enacted laws looking to the protection of the public from unscrupulous persons or persons of insufficient education or acquirement who might seek to treat disease and bodily ailments. Under the laws of this State any person desiring to practice medicine therein must first observe certain regulations regarding registration, must present satisfactory evidence of fitness to and pass such examination as the State Board of Health may require. Then, if the State Board of Health is satisfied that the attainments of the applicant are such as would warrant it, a certificate will be issued by said board authorizing him to practice medicine. Without such certificate no one is authorized to practice medicine in this State.

Section 8, Chapter 193, General Laws, is as follows: "Sec. 8. Any person who, not being then lawfully authorized to practice medicine within this State, and so registered according to law, shall practice medicine or surgery or attempt to practice medicine or surgery, or any of the branches of medicine or surgery, after having received therefor or with the intent of receiving therefor, either directly or indirectly, any bonus, gift, or compensation, or who shall open an office with intent to practice medicine or shall hold himself out to the public as a practitioner of medicine, whether by appending to his name the title of doctor or any abbreviation thereof, or M. D., or any other title or designation implying a practitioner of medicine, or in any other way, shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be fined fifty dollars, and upon each and every subsequent conviction shall be fined one hundred dollars and imprisoned thirty days, either or both, in the discretion of the court; and in no case when any provision of this chapter has been violated shall the person so violating such provision be entitled to receive compensation for services rendered."

Upon this section of the statute the complaint against the defendant is founded and under it he was convicted in the court below.

It appears from the testimony of the defendant that at the time of the trial he was fifty-two years of age; that in his boyhood he attended a grammar school which he left at the age of thirteen or fourteen years, and he *thinks* that he attended for two terms some institute, the name or location of which he does not disclose; that after leaving the institute he carried on the business of a mason at Brainerd, Minnesota, later coming to Massachusetts, where he was employed as a bricklayer; that at the age of forty-four he attended for three or four months a school of chiropractics at Brainerd, Minnesota, which was carried on by a Mrs. Lynch and called the Lynch School. In describing this school the defendant says "there was no set term, no set time for anybody to

practice at that time. There was no established school in the country, but I went there and stayed three or four months in it." After leaving the Lynch School the defendant returned to Massachusetts, where he opened an office and practiced as a chiropractor for a year or more, removing from there to Providence, where he has since remained and continued the chiropractic treatment. In establishing himself in Providence he rented two connected rooms in the Cæsar Misch Building, upon the door of one of which he caused to be inscribed, "Dr. Frank Siveny, Chiropractor," and upon a table in the room devoted to the reception of patients he exposed for distribution certain cards and pamphlets designed to convey information as to the great benefits to be derived from the chiropractic treatment, and specifying the time within which certain serious diseases and ailments could be cured thereby.

The word "chiropractic" or "chiropractor," according to the defendant, is coined from two Greek words, *chiro* and *practicas*, signifying something done with the hands. The defendant in his testimony makes use of the words "cure" and "cured" two or three times, apparently in a moment of forgetfulness, but on the whole, he seems to studiously avoid the use of these words, evidently under the impression that any attempt to cure disease would bring him within the practice of medicine. He further undertakes to exclude himself from the practice of medicine by showing that he does not take the pulse or ascertain the temperature of the patient, does not administer drugs and does not otherwise employ the means usually resorted to by physicians in aid of their diagnosis. He claims that the chiropractic idea is not to cure the disease, but to remove the cause and thus allow or bring about a recovery therefrom, a distinction which we find some difficulty in appreciating. The real design and scope of this treatment, as practiced by the defendant, is succinctly set forth in the card which he prepared or adopted and distributed. The card is as follows:

"Hours, 9 to 5. Sundays and evenings by appointment. Frank Siveny, D. C., 402 Westminster Street, Cæsar Misch Building, Providence, R. I.

"CHIROPRACTIC: A new science of adjusting the causes of disease without drugs, based on a thorough knowledge of the nervous system. Nerves which control the various functions of the body emerge from small openings between the bony segments of the spinal column; a slight variation of these bones will cause pressure on a nerve and cut off the flow of mental impulses, the result of which is disease. The chiropractic method is to adjust the abnormality, remove the pressure and thus permit the nerve to regain its normal size and duty, thereby removing the disease.

"Because it is new, don't say 'impossible.' That is what was said of Marconi. Do not condemn until you investigate. I am the only practitioner of this science in New England.

"If you have any of the following ailments stop taking drugs. Let the chiropractor adjust the causes. He knows where to find the causes of your disease and will prove it if you give him an opportunity. Abscesses, asthma, appendicitis, blindness, Bright's Disease, brain fever, bladder troubles, bronchitis, cancer (any part of the body), constipation, cataract, cholera morbus, childbed fever, catarrh, colic, curvature, diabetes, diarrhœa, dysmenorrhœa, dropsy, dysentery, deafness, diphtheria, epilepsy, eczema, erysipelas, female diseases, fevers (all types), goitre, gall stones, gout, gastroynia, hernia, hysteria, hay fever, heart disease, hydrocele, impotency, indigestion, insanity, jaundice, kidney trouble, liver diseases, la grippe, locomotor ataxia, lumbago, lupus, mumps, measles, malarial fever, meningitis, neuralgia, nervous debility, pharyngitis, palsy, pleurisy, paralysis, pneumonia, peritonitis, piles, quinsy, rheumatism, sarcocele, sciatica, sight, spleen, scrofula, St. Vitus Dance, stuttering, spinal-meningitis, spinal diseases, tumors (any part of the body), typhoid, vertigo, worms.

"Diseases marked with asterisk are special. This list is only a small portion of the diseases we adjust for. Common names are used so that everyone may understand. Don't be discouraged if your disease is not listed here, for space is limited."

The pamphlet by G. H. Patchen, M. D., entitled "The Chiropractic Idea," was also circulated by the defendant and bears upon the back of it in large type "Presented by Frank Siveny, Chiropractor, 402 Westminster St., Providence, R. I., Cæsar Misch Bldg."

This pamphlet contains among other things the following statement: "Abstractedly, the term (chiropractor) is a proper one to apply to any trade or profession in which the hands are the tools used in performing any specified work. But applied to the study of the cause, nature and elimination of disease, it means a science and philosophy which claims to be able not only to analyze and locate, unerringly, the physical cause of disease, but, also, to provide an original, unique and adequate means of adjusting or removing this cause more promptly, radically and permanently than by any other method known at the present time." Further on, the pamphlet enumerates some thirty or more serious diseases, the causes of which can be removed and a recovery accomplished within certain specified periods by the employment of the chiropractic treatment.

In the case of *State* v. *Mylod*, 20 R. I. 632, it was held that in the construction of penal statutes it was the well established rule that words and phrases must be taken in their ordinary acceptation and popular meaning, unless a contrary intent appears; that the practice of medicine, as ordinarily or popularly understood, has relation to the art of preventing, curing, or alleviating disease and consists in the discovery of the cause and nature of disease, and the administration of remedies or the prescribing of treatment therefor.

The practice of medicine does not wholly depend upon the administration of drugs. It is a matter of common knowledge that the use of drugs by doctors of medicine has

materially decreased, especially during the last twenty years or more, and that not infrequently the medical practitioner limits his efforts to cure or alleviate disease to the regulation of diet and exercise, or to prescribing some change of scene, climate or environment, reaching a conclusion as to the needs of his patient after learning his physical condition through a proper diagnosis in which he is materially aided by his knowledge of disease, its origin, its anatomical and physiological features and its causative relations.

The question now is has the defendant been guilty of practicing medicine within the terms of the statute, the phrase "practice medicine" to be taken in its ordinary acceptation and popular meaning. We think he has. He has undertaken by a certain system or method of treatment to cure or alleviate disease or pain. His intentions so to do are clearly evidenced by the testimony of witnesses and the literature which he has adopted and distributed in the advertisement of his business, and he has exacted a certain compensation for each treatment or group of treatments.

To refer again to the Patchen circular, we find that the defendant boldly claims to be versed in that science and philosophy which enables him to analyze and unerringly locate the physical cause of disease and to be capable of applying the proper remedy therefor. If it be assumed that the method or system practiced by the defendant is of any value it must also be assumed that some knowledge of disease, its origin, its anatomical and physiological features and its causative relations must be employed to locate and determine its nature, unless the defendant would have us believe that all the ills to which flesh is heir proceed from the impengment of nerves between the sectional vertebrae of the spine, and that whenever one or more displaced sections are brought into proper alignment the disease will disappear without the need of any determination on the part of the chiropractor as to the location of the affected part or the nature of the ailment. This view of the matter we are not prepared to accept.

The defendant has taken an exception to the refusal of the court below to quash the complaint on the ground that the offense is not stated with a clearness and particularity sufficient to apprise him of the charge against him and enable him to prepare his defence.   We do not see any merit in this exception.   There is no difficulty in ascertaining from the perusal of the complaint that the defendant is charged with holding himself out as a practitioner of medicine versed in and willing to practice the art of preventing, curing and alleviating disease and pain, for a reward or fee, without the authorization of the State Board of Health.

The defendant sets up in his brief that he is charged, in the first place, with "opening an office with intent to practice medicine and surgery by appending to his name Chiropractor."   This partial statement is, by itself, incorrect and misleading.   The complaint charges that the defendant "did open an office with intent to practice medicine and did hold himself out to the public as a practitioner of medicine by appending to his name the title of Chiropractor *and* by representing that he was versed in and willing to practice for compensation the art of preventing, curing and alleviating disease and pain."

The attempt of the defendant to divide the charge in the complaint into a series of separate charges and then to individualize them in his argument does not seem to us to be warranted or to serve any useful purpose.

The plaintiff's exceptions numbered two, three, four and six, relate to the rulings of the court as to the admission and exclusion of evidence.

(3)   The defendant asked Dr. Gardner T. Swarts, the complainant, if he issued the complaint on the strength, alone, of the word Chiropractor.   This was objected to and we think properly excluded by the court.   It was immaterial.   The complaint speaks for itself and the mental attitude of Dr. Swarts in making the complaint is in no way important.

(4)   The defendant also interrogated some of the witnesses with a view to showing the benefits resulting to some of the

parties who had been treated by the defendant and that in some cases he had succeeded in alleviating their troubles after regular doctors of medicine had made the attempt and failed. These questions were objected to and we think properly ruled out as immaterial. The result of defendant's treatment is of no consequence in the present inquiry. The purport of the complaint is that the defendant had been practicing medicine without authority. The result of such practice, to the patient, if shown, could not have aided the jury in determining the question submitted to them.

(5) The defendant also objected to the introduction of certain books and pamphlets descriptive of the Chiropractic treatment and setting forth its advantages and beneficial results to those who might be suffering from either of the serious diseases and ailments enumerated therein. We do not find any error in the introduction of this evidence. These books, etc., related to Chiropractic schools and methods to which the defendant had referred with approval in his testimony.

(6) The defendant requested the court to charge the jury that "If the jury find that a chiropractic is not a practitioner of medicine and surgery, then your verdict should be for the defendant." This request was rightly refused. The question for the jury was not thus limited. The real question was the broader one as to whether the defendant, under all the evidence in the case, had been guilty of practicing medicine without authority.

The defendant's exceptions are overruled and the case is remitted to the Superior Court for sentence.

*Comstock & Canning, Patrick P. Curran,* for State.

*Cassius L. Kneeland, George A. Breaden,* for defendant.