(October 9, 1916.)

STATE, Respondent, v. MARCUS S. FITE, Appellant.

[159 Pac. 1183.]

STATUTORY CONSTRUCTION—PRACTICE OF MEDICINE AND SURGERY—CHIRO-PRACTICS.

　　1. Constitutional provisions and statutory enactments should be read and construed in the light of conditions of affairs and circumstances existing at the time of their adoption.

　　2. One following the vocation of a chiropractor, who charges and receives compensation for his services as such, is not thereby engaged in the practice of medicine and surgery as defined in sec. 1353, Rev. Codes, wherein it is provided: "Any person shall be regarded as practicing medicine and surgery, or either, who shall advertise in any manner, or hold himself or herself out to the public, as a physician and surgeon, or either, in this state, or who shall investigate or diagnosticate, or offer to investigate or diagnosticate, any physical or mental ailment of any person with a view of relieving the same as is commonly done by physicians and surgeons, or suggest,

recommend, prescribe or direct, for the use of any person, sick, injured or deformed, any drug, medicine, means or appliance for the intended relief, palliation or cure of the same, with the intent of receiving therefor, either directly or indirectly, any fee, gift or compensation whatsoever."

[As to legal meaning of "profession" or "professional," see note in Ann. Cas. 1913E, 242.]

APPEAL from the District Court of the Second Judicial District for Nez Perce County. Hon. Edgar C. Steele, Judge.

Appellant was convicted of practicing medicine within this state without having obtained a license so to do. Judgment *reversed.*

J. F. Ailshie and Fred E. Butler, for Appellant.

In construing a statute the court should take into consideration the reason of the law; that is, the object and purpose of the same, and the object and contemplation of the legislative body in enacting the same, and the time and conditions under which it was passed. (*Wood v. Independent School Dist.*, 21 Ida. 734, 124 Pac. 780; *Oneida Co. v. Evans*, 25 Ida. 460, 138 Pac. 337; *Oregon S. L. R. R. Co. v. Minidoka*, 28 Ida. 214, 153 Pac. 425; *Colborn v. Wilson*, 24 Ida. 94, 132 Pac. 579.)

The statute reads, "any drug, medicine, means or appliance." Applying the doctrine *ejusdem generis,* the words "means or appliances," being general terms, are limited by the preceding words, "drugs and medicine," and refer back to the subject "practice of . . . . medicine and surgery," so that they belong to the same class or genus. (*State v. Gallagher*, 101 Ark. 593, 143 S. W. 98, 38 L. R. A., N. S., 330; *State ex rel. Spriggs v. Robinson*, 153 Mo. 271, 161 S. W. 1169; *San Antonio Independent School Dist. v. State* (Tex.), 173 S. W. 525.)

Where a statute expressly forbids certain things, there is an implication raised that it was the legislative intent to exclude from that prohibition every other thing. (*Scott v. Ford*, 52 Or. 288, 97 Pac. 99; 19 Cyc. 23; 36 Cyc. 1122, n. 48.)

That this statute, sec. 1353, was only intended to cover "medicine and surgery" is shown by the frequent recurrence of the words "or either" following the mentioning of these two professions. (*People v. Chong*, 28 Cal. App. 121, 151 Pac. 553.)

It cannot be contended that chiropracty falls within the term "drugs or medicines"; the prosecution must be based upon the words "means or appliances." (*State v. Gallagher*, 101 Ark. 593, 143 S. W. 98, 38 L. R. A., N. S., 328; *State v. Liffring*, 61 Ohio St. 39, 76 Am. St. 358, 55 N. E. 168, 46 L. R. A. 334; *Hayden v. State*, 81 Miss. 291, 95 Am. St. 471, 33 So. 653; *State v. Biggs*, 133 N. C. 729, 98 Am. St. 731, 46 S. E. 401; *Martin v. Baldy*, 249 Pa. 253, 94 Atl. 1091.)

Many courts have held that massage treatments of various kinds and character have not fallen within the purview of general medical statutes. (*State v. Lawson* (Del.), 65 Atl. 593; *Reg. v. Valleau*, 3 Can. Crim. Cas. 435; *People v. Gordon*, 194 Ill. 560, 88 Am. St. 165, 62 N. E. 858; *Parks v. State*, 159 Ind. 211, 64 N. E. 862, 59 L. R. A. 190; *Witty v. State*, 173 Ind. 404, 90 N. E. 627, 25 L. R. A., N. S., 1297; *Milling v. State* (Tex.), 150 S. W. 434.)

J. H. Peterson, Atty. Genl., D. A. Dunning and Herbert Wing, Assts., Henry S. Gray and Miles S. Johnson, for Respondent.

The practice of chiropracty appears to have originated in the state of Iowa, and hence it is pertinent to inquire as to the position taken by the highest court in that state relative to the question involved in the case at bar. (*State v. Corwin*, 151 Iowa, 420, 131 N. W. 659; *State v. Zechman*, 157 Iowa, 158, 138 N. W. 387; *Commonwealth v. Zimmerman*, 221 Mass. 184, 108 N. E. 893; *Locke v. Ionia Circuit Judge*, 184 Mich. 535, 151 N. W. 623; *State v. Siler*, 169 N. C. 314, 84 S. E. 1015; *People v. Ellis*, 162 App. Div. 288, 147 N. Y. Supp. 681; *Board of Med. Ex. v. Freenor* (Utah), 154 Pac. 942; *People v. Ratledge*, 172 Cal. 401, 156 Pac. 455; *People v. Vermillion*, 30 Cal. App. 417, 158 Pac. 504; *State v. Griener*, 63 Wash. 46,

114 Pac. 898; *State v. Smith,* 233 Mo. 242, 135 S. W. 465, 33 L. R. A., N. S., 179; *Swartz v. Siveny,* 35 R. I. 1, 85 Atl. 33; *Commonwealth v. Jewell,* 199 Mass. 558, 85 N. E. 858.)

"As new schools of practice come into favor their followers must possess the requirements for the practice of medicine or surgery or prevail upon the legislature to make separate provisions for them as it has done for the osteopath." (*State v. Johnson,* 84 Kan. 411, 114 Pac. 390, 41 L. R. A., N. S., 539.)

The police power of the state extends to the point of empowering the legislature to protect the individual from his own ignorance and from those who desire to prey thereon. (*State v. Davis,* 194 Mo. 485, 92 S. W. 484, 5 Ann. Cas. 1000, 4 L. R. A., N. S., 1023.)

A chiropractor comes within the provisions of sec. 1353. (*Swartz v. Siveny, supra; State v. Wilhite,* 132 Iowa, 226, 11 Ann. Cas. 180, 109 N. W. 730.)

Even applying the rule of *ejusdem generis,* as contended for by the defendant, our statute is broad enough to include the chiropractor within its provisions, although it was enacted at a time prior to the establishment of schools of chiropracty. (*State v. Corwin,* 151 Iowa, 420, 131 N. W. 659.)

MORGAN, J.—This is an appeal from a judgment pronounced against the appellant upon his conviction of having practiced medicine within this state without having obtained a license so to do.

The practice of medicine in Idaho is regulated by chap. 17, title 8, of the Political Code (secs. 1341 to 1356, inclusive). Sec. 1350 provides that any person practicing medicine and surgery within this state without having obtained the license required, or contrary to the provisions of that chapter, shall be guilty of a misdemeanor, and fixes the penalty therefor. Sec. 1353, in so far as it is applicable to this case, is as follows: "Any person shall be regarded as practicing medicine and surgery, or either, who shall advertise in any manner, or hold himself or herself out to the public, as a physician and surgeon, or either, in this state, or who shall investigate or diagnosticate, or offer to investigate or diagnosticate, any

physical or mental ailment of any person with a view of relieving the same as is commonly done by physicians and surgeons, or suggest, recommend, prescribe or direct, for the use of any person, sick, injured or deformed, any drug, medicine, means or appliance for the intended relief, palliation or cure of the same, with the intent of receiving therefor, either directly or indirectly, any fee, gift or compensation whatsoever: *Provided, however,* this chapter shall not apply to dentists and registered pharmacists or midwives in the legitimate practice of their respective professions, nor to services rendered in cases of emergency, where no fee is charged." The proper interpretation of that section is our chief concern in this case.

The record discloses that appellant, who is a chiropractor, had no license to practice medicine and surgery; that he administered chiropractic treatments to certain persons and charged and received compensation therefor; that these treatments consisted in the manipulation of the region of the patient's spinal column with the hands of the practitioner and that no instruments were used nor were any drugs or medicine prescribed or given. The evidence does not tend to show that appellant held himself out to the public as a physician and surgeon, or either, or that he investigated or diagnosticated, or offered to investigate or diagnosticate, any physical or mental ailment of any person with a view to relieving the same, as is commonly done by physicians and surgeons, nor did he suggest, recommend, prescribe or direct, for the use of any person sick, injured or deformed, any drug, medicine, means or appliance for the intended relief, palliation or cure of the same, unless a chiropractic treatment, as above described, can be construed to be a "means" or "appliance" in the sense in which these words were employed by the legislature in sec. 1353, *supra.*

The courts of last resort of a number of states have passed upon statutes intended to regulate the practice of medicine and surgery. Some of them have held that the giving of treatments without the employment of instruments, appliances or agencies such as are commonly used by physicians

and surgeons, and without the use of drugs or medicines, is not violative of these statutes. Among the cases so holding are: *State v. Liffring,* 61 Ohio St. 39, 76 Am. St. 358, 55 N. E. 168, 46 L. R. A. 334; *Hayden v. State,* 81 Miss. 291, 95 Am. St. 471, 33 So. 653; *State v. Gallagher,* 101 Ark. 593, 143 S. W. 98, 38 L. R. A., N. S., 328; *State v. Herring,* 70 N. J. L. 34, 56 Atl. 670, 1 Ann. Cas. 51; *Smith v. Lane,* 24 Hun (N. Y.), 632; *Nelson v. State Board of Health,* 108 Ky. 769, 57 S. W. 501, 50 L. R. A. 383; *Martin v. Baldy,* 249 Pa. 253, 94 Atl. 1091; *State v. McKnight,* 131 N. C. 717, 42 S. E. 580, 59 L. R. A. 187; *State v. Biggs,* 133 N. C. 729, 98 Am. St. 731, 46 S. E. 401, 64 L. R. A. 139. Others adhere to the doctrine that one who treats or attempts to treat another for any physical or mental ailment, in any manner whatever, for compensation, must first procure a license to practice medicine and surgery or be held to have violated the law. From the latter class of decisions the following are selected: *Swarts v. Siveny,* 35 R. I. 1, 85 Atl. 33; *State v. Gorwin,* 151 Iowa, 420, 131 N. W. 659; *State v. Smith,* 233 Mo. 242, 135 S. W. 465, 33 L. R. A., N. S., 179; *State v. Erickson* (Utah), 154 Pac. 948; *People v. Gordon,* 194 Ill. 560, 88 Am. St. 165, 62 N. E. 858; *Parks v. State,* 159 Ind. 211, 64 N. E. 862, 59 L. R. A. 190; *Bragg v. State,* 134 Ala. 165, 32 So. 767, 58 L. R. A. 925; *People v. Ratledge,* 172 Cal. 401, 156 Pac. 455.

The apparent lack of harmony among the reported cases may be accounted for, to a considerable extent at least, by the difference in the language employed by the different legislatures in formulating statutes upon the subject. These statutes may be divided into two classes: 1. Those which seek to prevent the use of drugs, medicines, surgical instruments and appliances by persons unskilled in their use, and 2. Those which seek to prevent the practice, or pretended practice, of the healing art, in any manner, by persons who do not possess sufficient educational qualifications to enable them to pass a medical examination such as is prescribed by a board of medical examiners provided for by law. The statute of Idaho here under consideration belongs to the former classification.

In considering this legislative enactment we are guided by the rules heretofore adhered to by this court relative to statutory interpretation.

It was said in case of *Colburn v. Wilson,* 24 Ida. 94, 132 Pac. 579: "It is a well-recognized rule of law that a section of the statute should be construed in the light of the purpose for which the legislature enacted the particular act, of which such section is a part." (See, also, *Oregon etc. R. R. Co. v. Minidoka Co.,* 28 Ida. 214, 153 Pac. 424; *Oneida Co. v. Evans,* 25 Ida. 456, 138 Pac. 337; *Wood v. Independent School Dist. No. 2,* 21 Ida. 734, 124 Pac. 780.)

In *Adams v. Lansdon,* 18 Ida. 483, 110 Pac. 280, it is said: "Laws are enacted to be read and obeyed by the people, and in order to reach a reasonable and sensible construction thereof, words that are in common use among the people should be given the same meaning in the statute as they have among the great mass of the people who are expected to read, obey and uphold them." (See, also, *In re Bossner,* 18 Ida. 519, 110 Pac. 502; *Ingard v. Barker,* 27 Ida. 124, 127 Pac. 293; *State v. Morris,* 28 Ida. 599, 155 Pac. 296.)

Constitutional provisions and statutory enactments should be read and construed in the light of conditions of affairs and circumstances existing at the time of their adoption. (*Toncray v. Budge,* 14 Ida. 621, 95 Pac. 26.)

The law of Idaho regulating the practice of medicine and surgery, of which sec. 1353, *supra,* is a part, was enacted by the legislature in 1899. Up to that time no provision had been made for the appointment of a state board of medical examiners nor for subjecting applicants for a license to practice that learned profession to an examination touching their educational qualifications to do so. At that time chiropracty was unknown in this state and but little, if anything, was known of osteopathy. Those who offered to heal the afflicted were either graduates of reputable schools of medicine and surgery or were mere pretenders who assumed to practice that profession without having so graduated. It seems to us to be perfectly clear that the legislature, recognizing drugs and surgical instruments to be dangerous in the hands of the un-

skilled, sought, by the enactment of chap. 17, title 8, of the Political Code, to reach and prohibit the pretenders rather than practitioners of branches of the healing art which had not yet come into existence or were, at least, unknown in Idaho.

Subsequent legislatures seem to have adopted this view, for, in 1907, a law regulating the practice of osteopathy was enacted, now known as chap. 19, title 8, of the Political Code (secs. 1366 to 1371, inclusive), which prescribes the qualifications and provides for the examination and registration of those who practice that science within this state. The legislature in 1907 also adopted the law regulating the practice of optometry, being chap. 20, title 8, of the Political Code (secs. 1372 to 1384, inclusive), and in 1911 an act was passed providing for and regulating the examination and registration of graduate nurses and fixing their qualifications. (Chap. 186, Sess. Laws 1911, p. 614.)

In none of these subsequent enactments is any mention made of the act regulating the practice of medicine and surgery, nor are those who prove themselves to be qualified to practice osteopathy, optometry or to act in the capacity of graduate registered nurses exempted by any expression in these acts from the operation of the medical law. It is to be inferred from this circumstance that the legislative branch of our state government has not placed upon that law the broad and comprehensive construction contended for by counsel for respondent here, whereby the language, ''or suggest, recommend, prescribe or direct for the use of any person sick, injured or deformed any drug, medicine, means or appliance for the intended relief, palliation or cure of the same,'' shall be held to prohibit the legitimate practice of their professions by osteopaths, optometrists, nurses or chiropractors, unless they pass an examination intended to test the qualifications of physicians and surgeons. Upon the other hand, it has given to the clause contained in sec. 1353, *supra,* ''as is commonly done by physicians and surgeons,'' controlling force, and has limited the prohibition contained in the chapter in question to persons who would attempt to practice medicine

and surgery without first having obtained a license so to do by the words, ''physicians and surgeons,'' as those words were used and commonly understood by the people of Idaho at the time the law was enacted. We believe this to be a correct interpretation of that statute, and that it was the intention of the legislature which enacted it that it should be so limited.

In case of *Empire Copper Co. v. Henderson,* 15 Ida. 635, 99 Pac. 127, this court, quoting from Sutherland on Statutory Construction, vol. 2, sec. 363, said: ''The intent is the vital part, the essence of the law, and the primary rule of construction is to ascertain and give effect to that intent. 'The intention of the legislature in enacting a law is the law itself, and must be enforced when ascertained, although it may not be consistent with the strict letter of the statute.' . . . . 'Intent is the spirit which gives life to a legislative enactment.' 'In construing statutes the proper course is to start out and follow the true intent of the legislature, and to adopt that sense which harmonizes best with the context, and promotes in the fullest manner the apparent policy and objects of the legislature.' ''

We conclude that the practice of chiropracty is not the practice of medicine and surgery as defined in sec. 1353, *supra,* and that appellant was erroneously convicted.

The judgment of the trial court is reversed, with instructions to dismiss the action.

Sullivan, C. J., and Budge, J., concur.