# CHICAGO & N. W. RY. CO. v. HALL. COUNTY TREASURER, etc.

(No. 1826; November 29, 1933; 26 Pac. (2d) 1071)

For the plaintiff there was a brief by *R. R. Rose* and *Vincent Mulvaney*, both of Casper, Wyoming, and oral argument by *Mr. Rose*.

For the defendant there was a brief and the cause was argued by *H. S. Harnsberger,* of Lander, Wyoming.

384

BLUME, Justice.

This case is before us on a certified constitutional question which reads as follows:

"Is Section 2 (Section 1 is meant) of Chapter 57, Session Laws of 1923 (Wyoming Revised Statutes

1931, 115-1801) unconstitutional in so far as it relates to a tie preserving plant located in the State of Wyoming and contiguous to the railroad company's main line right of way and outside the corporate limits of any city or town, and owned by a railroad company and devoted exclusively to the purpose of treating and conditioning railroad ties, which said ties, when so treated, are used exclusively in the construction, maintaining and repair of the tracks of the railroad company owning the tie preserving plant?"

The question before us is as to whether or not Section 1 of Chapter 57 supra, is in conflict with section 10 of Article 15 of the Constitution of this state, which, so far as pertinent here, and so far as argued, provides as follows:

"The duties of the state board shall be as follows: * * * * to assess at their actual value the franchises, roadway, roadbed, rails and rolling stock and all other property, used in the operation of all railroads and other common carriers, except machine shops, rolling mills and hotels in this state * * * *."

Prior to 1923 it was provided by section 2813, Wyo. C. S. 1920, that the State Board of Equalization should assess all railroad property in the state except such as was not used for railroad purposes and except machine shops, rolling mills or hotels, and that the property not assessed by that board should be assessed locally by the county assessors. That had been the law since 1890. Session Laws 1890-91, Ch. 99. But in 1923 the legislature amended the law, and provided by section 1 of chapter 57 of the session laws of that year, now appearing as Section 115-1801, Wyo. Rev. St. 1931, as follows:

"The state board of equalization is hereby empowered, and it is made its duty, to assess all property of the railroads and railroad corporations in

the state of Wyoming; provided, however, that all machine shops, rolling mills and hotels, tie preserving plants and any property which is not used in connection with the operation of such railroads and railroad corporations, shall be assessed by the county assessor of the county in which such property is situated, in the manner now provided by law for the listing and valuation of real and personal property."

The following section provides in greater detail the railroad property that should be assessed by the State Board of Equalization, but also excepts machine shops, rolling mills, hotels and tie preserving plants in the same manner as the preceding section, and both this and the preceding section are in fact involved in the consideration of the question before us, and that question is, in brief, as to whether or not tie preserving plants should be assessed by the State Board of Equalization, or locally by the county assessors, and whether the statutory sections mentioned are in conflict with or contrary to the constitutional provision heretofore quoted. Assessments for purely city or town purposes are not involved herein.

It may be noted that the section of the constitution above set out on the one hand specifically specifies "franchises, roadway, roadbed, rails and rolling stock." That class of property cannot be said to have a local situs, but pertains to a railroad as a whole. It must be assessed by the State Board of Equalization. On the other hand, the section, in what for convenience we may call an exception clause, specifically further refers to "machine shops, rolling mills, and hotels." That class of property cannot be assessed by the State Board of Equalization, but must be assessed locally by the county assessors of the counties in which it is located. A contrast is accordingly drawn between prop-

erty that has no local situs and property which has. The emphasis placed upon this contrast may be gleaned from the debates of the Constitutional Convention. It seems that it was originally proposed that the State Board of Equalization should ·assess all railroad property of every kind and that the taxes paid thereon should be distributed among the various local communities in proportion to the miles of railroad therein. Serious objection was raised to this method. The point came up in the afternoon of September 25, 1889, and we find among the debates (page 709, Journal) the following:

"Mr. Brown. I don't believe the machine shops should be assessed along with the rails and rolling stock. I believe every county should assess the property in that county. I would like to see that section separated."

"Mr. Hay. There is one thing about this I don't like. It says that it shall be distributed 'in proportion to the number of miles of railway laid in such counties, cities, towns, etc.,' If that means that a city which has a large amount of railroad property not connected with the road bed shall go in at the mileage assessments, I want that changed before it is passed. It might have four or five hundred thousand dollars worth of property and only two miles of railroad in that town, and if under this proposition it would only get the benefit of those two miles of road then I want this changed."

"Mr. Brown. The language is: 'The franchise, roadway, road bed, rails and rolling stock, and all other property used in the operation of all railroads and other common carriers operated in the state.' Now this carries with it all the machine shops, all the round houses, or rolling mills, and everything else that the company owns of that kind, because it is all used by that company in operating their road. I don't .think you want the value of these shops at Cheyenne ·distributed all along the line of this road among the various counties. I don't think we want it just that way."

And again, on page 717 of the Journal of the Constitutional Convention, we find among the debates as follows:

"Mr. Grant. Take the school district of Cheyenne. There might be only seven or eight miles of railroad track in this district, and you could not get the benefit of these shops. and the depot buildings, and everything of that kind."

"Mr. Riner. I think that the shop property should be assessed by the state board. The shops in Albany county should be assessed and pay taxes in that county upon the same basis as they pay taxes in this county."

"Mr. Hay. There is one point that has bothered me a good deal. For instance, the railroad company has four hundred thousand dollars worth of property in this county, one hundred thousand in Albany and one hundred thousand in Carbon county, and so on. This makes six hundred thousand in these three counties. That six hundred thousand is added to the road bed, and divided in each county on their mileage basis, so that in a county where there is four hundred thousand dollars worth of property it gets nothing for its shops at all, except its proportionate share according to the mileage, the same as one having only one hundred thousand dollars worth of shops, and it is not just."

"Mr. Brown. Take out the shops, depots and rolling mills."

"Mr. Hay. How would it do to leave out everything not on the right of way?"

"Mr. Grant. I would call attention to the fact that it has been decided by the courts that where there are thirty or forty acres of ground about, that it is a part of the right of way, depot grounds are a part of the right of way."

"Mr. Brown. The only way is to except a particular class of property, the machine shops, rolling mills and depots, but the rolling stock, I think, should apply to the school districts."

"Mr. Riner. I would like to take that section and amend it as suggested by Judge Brown."

"Mr. Chairman. The secretary will read the section as amended."

The section was not, in fact, corrected in accordance with the suggestion of Judge Brown, but was amended as shown by page 94 of the Journal of the Constitutional Convention to read substantially as we find it today; that is to say, hotels were included within the so-called exception clause. These were not included in the suggestion of Judge Brown. Depots, however, which were included in his suggestion, were not embraced within the exception clause, and it is not improbable that this was done because of the fact that depots were used in all of the various counties traversed by the railroads.

These debates show clearly that the underlying idea was that, generally speaking, property having a local situs should be assessed locally, or, as suggested by Judge Riner, should be assessed by the State Board of Equalization, but that the taxes paid thereon should be paid to the community in which it should happen to be located. The debate frequently referred to "shops." The term was not modified as it is in the constitution, because at that time there were, probably, no "shops" in this state, belonging to railroads, except machine shops. Mr. Hay's idea struck at the root of the question, when he suggested that the state board should not assess anything except the right of way. His suggestion was not adopted, partly apparently on the ground that the courts might hold property to be included in the right of way, not by the members intended to be included therein, and partly, seemingly, because all members finally came to the conclusion that some property having a local situs—specifically depots—should be assessed by the State Board of Equalization, because that class of property was found in every county traversed by railroads.

The question, then, before us cannot be said to be settled beyond controversy by the clauses of the constitution already discussed. It is true that the framers deemed it best to enumerate certain things in the exception clause, and there is a rule that expressio unius est exclusio alterius. But it has been held that this is a rule to be used merely in ascertaining the true meaning, and is not a rigid rule of universal application, and should never be applied to obscure the meaning or thwart the purposes of the constitution. Pine v. Comm., 121 Va. 812, 93 S. E. 652; 12 C. J. 707. Caution in applying it in the case at bar would seem to be suggested by the contrast above pointed out, and by the evident desire of the framers of the constitution in connection with property having a local situs, and a tie preserving plant has such situs. In any event it would seem to be clear that the exception clause cannot be controlling in the question before us unless the main clause—that part outside of the exception clause—can be said to embrace tie preserving plants. If neither the main nor the exception clauses do so, then, of course, the legislature is free to make such arrangements as to the place where it shall be taxed as it may desire. In so far as we have considered the main clause and the exception clause, they do not, standing by themselves, control the question before us, for, on the one hand, tie preserving plants can hardly be classified as machine shops or rolling mills, and on the other hand, they are different from franchises, rails, rolling stock, etc. We must, accordingly, proceed to consider whether the question before us is controlled by the remaining portion of section 10, supra, not yet considered, namely, by the words "and all other property used in the operation of all railroads and other common carriers."

We might say in that connection, before proceed-

ing further, that it is apparently argued by counsel for the defendant that tie preserving plants were not in use in 1889; that they were not in the contemplation of the framers of the constitution or of the people, and that they cannot, accordingly, be considered as embraced in, or contemplated by, the section of the constitution now under consideration. This contention, we think, is too broad. The section is a part of our organic law. The constitution is, in a sense, a living thing, designed to meet the needs of progressive society, amid all the detail changes to which such society is subject. State v. Keating, 53 Mont. 371, 163 Pac. 1156; Henshaw v. Foster, 9 Pick. (Mass.) 312. Hence, though tie preserving plants were not in existence at the time of the adoption of the constitution, still, if it can be said that the language used in the section under consideration, naturally construed, may fairly be said to embrace them, we would not be justified in excluding them therefrom merely for the reason that they were not in existence at the time of the adoption of the constitution. 12 C. J. 703-4.

It may be noted that the clause commencing with "all other property" contemplates that it—the property—shall be assessed by the state board of equalization, if it is used by *all* the railroads and other common carriers. We have italicized the word *all,* because it seems to have been entirely ignored by counsel for the plaintiff. They have cited us to a number of cases in which courts have construed what property is and what is not used in the operation of a railroad. See note 80 A. L. R. 252. But we need not determine whether tie preserving plants are so used. The determination in the affirmative would not help us here, for, in order that they shall be assessed by the state board of equalization, they must, according to the constitution, be

used by *all* railroads and other common carriers. We find no justification in ignoring the word *all*. It is in the constitution and must, if possible, be given some meaning. While we find no discussion of the word in the debates of the constitutional convention, yet it would seem that it was used deliberately, for "depots," deliberately left to be assessed by the state board, were evidently thought to be embraced within the clause of the section containing that word.

Nor is this all. The clause under consideration states that, in order that the state board may assess property, it must be such as is used in the operation not only of all railroads, but of other common carriers as well. Now there are express companies, canal companies, bus companies, which, in some cases at least, are common carriers. These do not use tie preserving plants. There are other common carriers which fall in the same class. If, accordingly, we give a literal meaning to the clause now under consideration, tie preserving plants must immediately be eliminated from the class of property required to be assessed by the state board of equalization under the section now under consideration. Not able to foresee what situations may arise in the future, we hesitate at this time to give the clause its literal meaning, and shall limit our construction to the apparent requirements of this case. For the present, then, we shall consider the clause as though other common carriers were not mentioned. Thus limited, what does it mean? It may be noted that reference to all other property follows a number of words which specify and designate certain specific properties and rights which have no local situs. Ordinarily speaking, this would require the application of the rule of ejusdem generis. 12 C. J. 707; Ex parte King, 141 Ark. 213, 217 S. W. 564. And

it is argued by counsel for the defendant that this rule should be applied here. But caution in that regard is suggested in view of the way in which "depots" were disposed of by the constitutional convention, leaving them to be assessed by the state board of equalization, and putting them, therefore, in the class along with franchises, rolling stock, etc.

And yet, there can be no doubt that the clause following the specific enumeration naturally suggests some relationship to the latter. What could that be? It may be noted that it refers to the *use* made of property, and the relationship mentioned can reasonably be found in that connection. The property enumerated consists of franchises, roadway, roadbed, rails and rolling stock. All of it is commonly and generally owned and used by all railroads, and that in every county in the state and in other states. Hence by applying the doctrine of ejusdem generis in the limited manner applicable in the case at bar, it may be reasonably said that the "other property" mentioned refers to property, which like franchises, rails, rolling stock., etc., is in common and general use. And the subsequent words suggest, if they do not compel, that construction. For when the constitution mentions property used by all railroads, it necessarily thereby refers to property in general and common use by them. Moreover, in case of doubt, the conditions and circumstances existing at the time of the constitution and the debates in the constitutional convention may be resorted to for elucidation. Story v. Richardson, 186 Cal. 162, 198 Pac. 1057, 18 A. L. R. 750; State v. District Court, 73 Mont. 541, 237 Pac. 525; State v. Fite, 29 Idaho 463, 159 Pac. 1183; Town v. Fairbanks, 204 Ala. 112, 86 So. 8. Now we saw that the members of the constitutional convention wanted railroad property having a local situs to be assessed locally

in the various counties; that, however, depots, which are, and in 1889 were, in common use in every county in the state traversed by a railroad, were left to be assessed by the state board of equalization. In view, then, of what we have said, it is hardly necessary to mention the rule that in case of doubt the constitutionality of a statute must be upheld, for the meaning of the section of the constitution under consideration seems entirely clear. It evidently means that the state board of equalization shall assess railroad property which, like franchises, roadway, roadbed, rails, rolling stock and depots are in general and common use in every county in the state and everywhere else, and it does not require assessment by that board of property which is not of that character. Whether tie preserving plants are of that nature is, of course, a question of fact. Still we think that we may take judicial notice of the fact that they are not, at least at this time, in general and common use as above mentioned. And we accordingly answer the constitutional question submitted to us in the negative.

KIMBALL, Ch. J., and RINER, J., concur.