(November 21, 1907.)

# W. W. WOODS,. E. C. STEELE, FREMONT WOOD, E. A. WALTERS, ALFRED BUDGE, J. M. STEVENS and E. L. BRYAN, Plaintiffs, v. ROBERT S. BRAGAW, as State Auditor, Defendant.

[92 Pac. 576.]

CONSTITUTIONAL PROVISIONS—APPLICATION OF LEGISLATIVE ENACTMENT —INCREASING SALARY OF DISTRICT JUDGES.

1. Article 5, section 27 of the constitution declares that the legislature may, by law, diminish or increase the compensation of any or all the following officers, to wit, governor, lieutenant-governor, secretary of state, auditor, state treasurer, attorney general, superintendent of public instruction, commissioner of immigration and labor, justices of the supreme court, and judges of the district courts, and district attorneys, but no diminution or increase shall affect the compensation of the officer then in office during his term, etc. *Held*, that the meaning of said section is plain and does not call for technical construction.

2. The act of the legislature approved March 14, 1907, increased the salary of the judges of the district court from $3,000 per annum, fixed by the constitution, to $4,000 per annum, fixed by said act. *Held*, that said act does not apply to the officer then in office during his term.

(Syllabus by the court.)

ORIGINAL application for writ of mandate. Demurrer to complaint. *Demurrer sustained.*

Jess B. Hawley, A. A. Fraser, John P. Gray, Miles S. Johnson, Chas. M. Kahn, and Borah, Cavanah & Blake, Attorneys for Plaintiffs.

The contention of the plaintiffs is that until after the judicial salaries have been once fixed and determined by legislative act, the provisions of section 27, article 5, forbidding their increase or diminution during the incumbent's term, have no application whatsoever, and further, that the constitutional provision as to judicial salaries contained in

section 17, article 5, is merely intended as temporarily fixing the salary until otherwise fixed by the legislature.

In section 19, article 4, where provision is made for the salaries of the executive offices, it is clear that the constitutional convention sought to place strong restrictions against the raising of salaries of executive officers during the incumbents' terms.

The framers of the constitution intended to and did make a distinction between the power of the legislature to increase the salaries of the executive and judicial officers of the state.

Section 17 of article 5, in stating what the compensation of the judiciary should be, does not use the language of finality or indicate that the salary there stated is to be the fixed salary or anything but a mere temporary allowance. It certainly did not use in this section the language of finality such as it used with regard to the executive department in section 19 of article 4.

The constitution did not expect the judges that took office after its adoption to be forced to abide by a salary stated in the constitution for their long terms of six and four years; otherwise the convention would have used similar language regarding judicial salaries to that used regarding executive salaries.

"Increase and diminish," as stated in section 27, article 5, only applies after the legislature has once fixed the salary, and has no application or reference to the temporary salary stated in the constitution.

"When the legislature by enactments either impliedly or expressly construes a provision of a statute or constitution, in doubtful cases the courts will accept legislative construction and enforce provisions in accordance therewith if the ambiguous language of the provision is such as admits of construction." (*State v. Tingey,* 24 Utah, 225, 67 Pac. 33, 34; *Adams v. Howe,* 14 Mass. 340, 7 Am. Dec. 216-218.)

It would have been a useless act for the legislature of the ninth session to provide an increase of salary which would only take effect four years after, when it well knew that another session of the legislature would convene in two years.

The wording of the Utah constitution shows the intent of the framers of the constitution to limit the powers of the legislature from the very inception of the government a great deal more than does the wording of our constitution, yet their court has construed a similar provision in accordance with our contention.

"It is evident that a change of those provisions to which the term 'until otherwise provided by law' is applied was left to the discretion of the legislature, and that they may be changed whenever the legislature chooses to exercise that discretion, except that, after the salary of any officer fixed by the constitution is changed by the legislature, it cannot thereafter again be changed so as to affect the salary of any officer during the term for which he is elected." (*State v. Tingey*, 24 Utah, 225, 67 Pac. 83.)

J. J. Guheen, Attorney General, and B. S. Crow, for Defendant.

Section 27 of article 5 of the state constitution gives no room for technical principles of construction; the meaning is expressed as clearly as language can make it.

The reason for the inhibition in section 27 of article 5 is apparent. A man who runs for one of the public offices enumerated in the section has the assurance of a certain remuneration during his entire term—a remuneration which a hostile legislature cannot cut down and diminish, and which, on the other hand, a friendly, partisan legislature cannot increase. (*Carlile v. Henderson*, 17 Colo. 532, 31 Pac. 118, 119; Mechem on Public Officers, sec. 858.)

The courts have closely followed and severely applied this constitutional provision to legislative acts. (Throop on Public Officers, sec. 465; *Weeks v. Texarkana*, 50 Ark. 81, 6 S. W. 504; *State v. Hudson Co.*, 44 N. J. L. 388; *Larew v. Newman*, 81 Cal. 588, 23 Pac. 227; *Milner v. Rubenstein*, 85 Cal. 593, 24 Pac. 935; *State v. Kelsey*, 44 N. J. L. 1; *Garvie v. City of Hartford*, 54 Conn. 441, 7 Atl. 723.)

The Utah case cited by plaintiff was decided under a constitutional provision which differs from ours, and which permits of a technical construction which ours does not.

The court in that case held that a ''compensation as fixed by law'' had the sense of a compensation as fixed by statute, and, since the then salary of the governor was not fixed by statute, but by the constitution, there was no inhibition on the legislature to increase it during his term. But our constitutional provision permits of no such technical refinement.

Other states have been controlled by corrupt legislative bodies not above venting their political spleen by cutting off the entire salary of officials placed in office by the opposite party; or who, on the other hand, would bankrupt the public treasury in rewarding political supporters in office. Evils such as these are those against which the framers of our constitution sought to safeguard the people on the one hand, and the public officials of the state on the other.

STEWART, J.—The plaintiffs are the judges of the several district courts of this state. The defendant is the state auditor. The proceeding is an original application in this court for a writ of mandate to compel the defendant to draw warrants in plaintiffs' favor, for the quarter ending June 30, 1907, in payment of salary, at the rate of $4,000 per annum from and after May 8, 1907. The defendant demurred to the complaint.

The only question presented for decision is: Does the act approved March 14, 1907, raising the salary of district-judges from $3,000 per annum to $4,000 per annum, apply to the judges in office at the time the act became a law, to wit, May 8, 1907? The plaintiffs were elected at the general election held throughout the state on the sixth day of November, 1906, and qualified and entered upon the duties of their respective offices on the first Monday of January, 1907, and were such judges at the time of filing the complaint, the term being four years.

Article 5, section 17 of the constitution provides: ''The salary of the judges of the district court until otherwise provided by the legislature, shall be $3,000 each per annum.'' This section contains no provision as to raising or lowering salaries.

Article 5, section 27 of the constitution provides: "The legislature may, by law, diminish or increase the compensation of any or all of the following officers, to wit: . . . . Judges of the district court . . . . , but no diminution or increase shall affect the compensation of the officer then in office during his term."

The act under consideration was approved March 14, 1907, and provides in section 2: "The salary of judges of the district court shall be four thousand dollars per annum." The plaintiffs contend that until after the salary of the district judges has been fixed by the legislature, the inhibition, contained in article 5, section 27 of the constitution, forbidding the increase or decrease of the salary during an incumbent's term of office has no application. The constitution, article 4, section 19, makes provision for the salary of the executive officers of the state for the term next ensuing after the adoption of the constitution, and in the same section provides: "The legislature may, by law, diminish or increase the compensation of any or all of the officers named in this section, but no such diminution or increase shall affect the salaries of the officers then in office during their term." The inhibition as to raising or decreasing salaries, as appears in this section, relates to executive officers only, while the inhibition found in article 5, section 27, relates to both executive and judicial officers. The framers of the constitution said in article 4, section 19, that the salaries of the executive officers of the state "is fixed as follows," while in article 5, section 17, they said the salary of "the judges of the district court until otherwise provided by the legislature, shall be," etc. From these premises plaintiffs argue that a distinction was clearly intended as to the inhibition placed upon the legislature in raising and diminishing the salaries of the executive and judicial officers of the state; that the salaries of executive officers were finally fixed by the constitution for the term next ensuing after its adoption, while the salary of the judges was a temporary allowance until otherwise provided by the legislature; that the ninth session (Laws 1907, p. 465) so construed the constitution for the reason that section 1 fixing

the salary of the executive officers also contains the inhibition found in article 4, section 19 of the constitution, while section 2 of said act (Laws 1907, p. 465), fixing the salary of the judicial officers of the state, does not contain the inhibition found in article 5, section 27, or any inhibition at all.

Article 5, section 27 of the constitution is as follows: "The legislature may, by law, diminish or increase the compensation of any or all the following officers, to wit: Governor, lieutenant-governor, secretary of state, state auditor, state treasurer, attorney general, superintendent of public instruction, commissioner of immigration and labor, justices of the supreme court and judges of the district courts and district attorneys; but no diminution or increase shall affect the compensation of the officer then in office during his term: Provided, however, that the legislature may provide for the payment of actual and necessary expenses of the governor, secretary of state, attorney general and superintendent of public instruction incurred while in the performance of official duty."

This language is plain and would seem to leave no doubt as to its meaning. The legislature may, by law, diminish or increase the compensation of any or all of the following officers: Governor, lieutenant-governor, secretary of state, state auditor, state treasurer, attorney general, superintendent of public instruction, commissioner of immigration and labor, justices of the supreme court and judges of the district courts and district attorneys; but no diminution or increase shall affect the compensation of the officer then in office during his term. That is, the legislature by law may increase or diminish the salary fixed by the constitution or the legislature, but no diminution or increase shall affect the compensation of the officer in office at the time of such diminution or increase. This does not say that the inhibition applies after the legislature has once fixed the salary, but it applies to any diminution or increase made by law.

Article 5, section 17 of the constitution which fixes the salary of the district judges, until otherwise provided by the legislature, places no limitation on the inhibition con-

tained in article 5, section 27. While article 4, section 19, in relation to the salaries of the executive officers of the state, says, "shall receive for their services compensation, which, for the term next ensuing after the adoption of the constitution, is fixed as follows," etc. Yet the evident intent of the makers of the constitution was in both sections to fix a salary which should be the compensation of such officers until the legislature provided otherwise; but neither of these sections in any way change or modify article 5, section 27. The latter grants to the legislature power to diminish or increase the salary of the officers named therein, but prohibits an increase from affecting the compensation of the officer then in office. The provisions of article 5, section 27, are too plain to call for technical construction. There can be no doubt about the meaning of the language used.

Plaintiffs also contend, that inasmuch as the legislature has otherwise provided by law for the salary of district judges in the act of March 14, 1907, that there is no law fixing or providing for a salary for such officers, unless said act applies to the judges now in office. This argument ignores the provision of article 5, section 27, that the salary of a district judge cannot be diminished or increased during the term of office of the officer then in office; also that said statute must be applied in accordance with the provisions of the constitution and not the constitution in conformity to the statute. The statute became a law upon its passage and approval as provided by the constitution, and in like manner it is applied and affects the officials therein named in accordance with the constitution, but no diminution or increase shall affect the officer then in office.

In the act of March 14, 1907, the legislature provided in section 1 that the salary of the executive officers therein named shall not be increased during the present term of such officer, while in section 2, fixing the salary of the judicial officers, nothing was said about said raise not affecting the officers then in office. From this it is contended that the legislature has placed a construction upon the constitution, and decided that the act raising the salary of the district

judges should apply to the officers then in office. A comparison of this act, however, discloses that the language of section 1 follows very closely the language of the constitution, article 4, section 19, and section 2 of said act follows article 5, section 17, the former of which contains an inhibition as to changing the salary of the officers named therein, while the latter contains no inhibition. The legislature evidently concluded it was advisable to follow the language of the constitution in fixing salaries as near as it was practicable, but there is nothing in the act to indicate that the legislature overlooked the general prohibition found in article 5, section 27 against increasing the salary of judicial as well as executive officers. But had the legislature intended that the act in question should apply to the officials then in office, it is not probable that they would have overlooked an appropriation to pay such increase. The fact that the legislature made no appropriation argues forcibly that the legislature did not intend to make the act applicable to the officers then in office. The reason for this prohibition would seem to be apparent to anyone, and its wisdom is beyond question. It is to prevent public officials from using the power of the office for their own personal advantage in securing additional compensation after the tenure has begun. As said by the supreme court of Colorado, ''Nothing in line of partisan or personal legislation could be more mischievous than that the general assembly should have the power at the opening of the legislative session to rush through acts increasing or diminishing the salaries of those just elected to executive offices. The temptation thus to reward favorites, punish opponents, or make bids for executive favors would be as great immediately before such officers had qualified as afterward.'' (*Carlile v. Henderson*, 17 Colo. 532, 31 Pac. 118.) The same argument would apply to judicial officers, and the framers of the constitution evidently intended to remove from the judiciary any temptation to use the power of the office to secure an increase of salary which would apply to the term of office when such increase was made.

Our attention is called to the case of *State v. Tingey*, 24 Utah, 225, 67 Pac. 33, and counsel for plaintiffs argue with much force that the supreme court of Utah in this case construed a provision of the constitution of that state similar to the constitution of Idaho in accordance with the contention of plaintiffs. The legislature of Utah passed an act increasing the salary of the various executive officers of the state, and the court held that it inured to the benefit of the officers in office at the time said act became a law. The court in that case gave two reasons which seemed to such court sufficient to justify its holding.

Article 7, section 20 of the constitution of Utah, after naming the officers, says: "Shall receive for their services quarterly a compensation as fixed by law, which shall not be diminished or increased so as to affect the salary of any officer during his term, or the term next ensuing after the adoption of this constitution." And also in the same section, "The compensation of the officers provided for by this article, until otherwise provided by law, is fixed as follows," etc. It was held in that case that inasmuch as the legislature at the same session made an appropriation to meet such increased salary of the officers mentioned in the act, that the legislature thereby placed a construction upon the constitution which would govern the court in that particular case, for the reason that the meaning of the language used in said article 5, section 20, was doubtful.

In the case at bar the legislature made no appropriation to pay the increased salary of the judges then in office under the provisions of the act of March 14th. Applying the argument of the supreme court of Utah to the act under consideration, the failure to make such appropriation would imply a legislative intent that such act was not intended to apply to the officials then in office.

The Utah court also held that the language of article 7, section 20, "Compensation as fixed by law, which shall not be diminished or increased so as to affect the salary of any officer during his term," etc., meant a compensation fixed by statute law should not be diminished or increased, etc.; that

the compensation fixed by the constitution was not a compensation fixed by law, hence such increase applied to the officer then in office.

The constitution of this state, article 5, section 27, however, says: "The legislature may, by law, diminish or increase . . . . but no diminution or increase shall affect the compensation of the officer then in office." It does not say the "compensation as fixed by law," but any compensation whether fixed by the constitution or by statute law, may be diminished or increased, but such diminution or increase shall not apply to the officer then in office. It will thus be seen that the constitution of Utah is very different from the constitution of Idaho, and that the terms of the act under consideration in that case are very different from the act under consideration in this case.

The Utah case is not an authority in this case. The constitution of Idaho is plain and its meaning without doubt; it does not call for technical construction, and, admitting that the act indicated a legislative construction of the constitution, still it is apparent from the act itself that the legislature did not intend that the act of March 14, 1907, should apply to the officers then in office. The demurrer to the complaint will be sustained without costs.

Sullivan, J., concurs.

Ailshie, C. J., did not sit at the hearing or participate in this opinion.