170 P.2d 411
HIGER v. HANSEN, State Auditor, et al.
No. 7299.

Supreme Court of Idaho.
June 20, 1946.

C. H. Higer, of Emmett, pro se, and Hawley & Hawley, of Boise, for plaintiff.

48

Frank Langley, Atty. Gen., and J. R. Smead, Phil J. Evans, Thomas Y. Gwillian, and M. Reese Hattabaugh, Asst. Attys. Gen., for defendants.

MILLER, Justice.

The 1945 Legislature by Chapter 77, Session Laws 1945, approved February 28th, amended Section 57-502, Idaho Code Annotated, increasing the salaries of Justices of the Supreme Court from $5000 to $6000 per annum, and judges of the district courts from $4000 to $5000 per annum. The act carried no emergency clause and became a law May 8, 1945. The act, insofar as it relates to salaries, is as follows:

"The salary of the Justices of the Supreme Court shall be $6,000.00 per annum, and the salary of the Judges of the district courts shall be $5,000.00 per annum. Such compensation shall be paid monthly as due out of the State Treasury * * *".

There are no restraints, inhibitions or prohibitions contained within the act against the payment of said salaries immediately upon the act becoming a law. The wording of the act follows very closely the wording of Section 17, Article V of the Constitution, providing the salaries of Justices of the Supreme Court and of district judges, and as originally adopted by the Constitutional Convention, reads:

"The salary of the Justices of the Supreme Court, until otherwise provided by the legislature, shall be three thousand dollars each per annum, and the salary of the Judges of the District Court, until otherwise provided by the legislature, shall be three thousand dollars each per annum, and no Justice of the Supreme Court or

Judge of the District Court, shall be paid his salary, or any part thereof, unless he shall have first taken and subscribed an oath that there is not in his hands any matter in controversy not decided by him which has been finally submitted for his consideration and determination, thirty days prior to the taking and subscribing such oath."

The payroll of the justices of the Supreme Court, when Chapter 77, supra, became effective, was submitted to the state auditor for payment of the increased salary. The state auditor sought the opinion of the attorney general, and then refused to pay the increased amount of salary provided by Chapter 77, supra, on the grounds that the payment thereof was prohibited by the provisions of Section 27 of Article V of the Constitution, and which said section purports to be as follows:

"The legislature may by law diminish or increase the compensation of any or all of the following officers, to-wit: Governor, Lieutenant-Governor, Secretary of State, State Auditor, State Treasurer, Attorney-General, Superintendent of Public Instruction, Commissioner of Immigration and Labor, Justices of the Supreme Court, and Judges of the District Courts and District Attorneys, but no diminution or increase shall effect the compensation of the officer then in office during his term, provided, however, that the legislature may provide for the payment of actual and necessary expenses of the Governor, Secretary of State, Attorney-General and Superintendent of Public Instruction incurred while in the performance of official duty."

It is for the purpose of determining what affect, if any, Section 27, Article V, supra, has upon or over Chapter 77, supra, that this action was commenced and prosecuted. Just why Section 27, Article V, supra, was included in the Constitution is problematical, as no one now seems to know why or is able to justify its inclusion. Section 19 of Article IV of the Constitution provided the amount of salary to be paid the various executive officers, and as applied to such officers contains everything and even more than is contained in Section 27, Article V, supra. It is provided in Section 19, Article IV, that "The legislature may by law, diminish or increase the compensation of any or all of the officers named in this section, but no such diminution or increase, shall affect the salaries of the officers then in office during their term; Provided, however, the legislature may provide for the payment of actual and necessary expenses to the Governor, Lieutenant-Governor, Secretary of State, Attorney-General, and Superintendent of Public Instruction, while traveling within the State in the performance of official duty." Considerable discussion was indulged in by the delegates to the Constitutional Convention incident to salaries. Mr. Reid of Nez Perce County was chairman of the salary committee, and he and many other delegates were not slow in establish-

ing salaries so low that the practice seems to have persisted and apparently has become a part of our fixed economic policy. We are not unmindful of the fact that it is generally considered that the salary of a Constitutional officer cannot be increased or diminished during his term of office, and for that reason that none of the justices of the Supreme Court could receive the increase in salary as provided by Chapter 77, supra, until a new term begins.

■ Some criticism may arise from the fact that the justices of this court are individually interested in the question involved, and, accordingly, it may be urged they are disqualified from hearing, considering or determining this proceeding. It would be fortunate, indeed, if the matter could be determined without this court having to participate, but since the machinery of the law furnishes no other means or tribunal to hear and determine the same, we must deal with the subject as best we can, and with the means at our disposal. The case of McCoy v. Handlin, 35 S.D. 487, 153 N.W. 361, 368, L.R.A.1915E, 858, Ann.Cas.1917A, 1046, a parallel case, in which a vast array of authorities are cited, holds that the disqualification of judges must yield to necessity, and wherein it is made clear, under both reason and authority, that the rule of necessity must be recognized in proper cases. The author of said decision quotes from 23 Cyc. 581:

"The rule as to the disqualification of judges must yield to the demands of necessity. Where disqualification, if permitted to prevail, destroys the only tribunal in which relief may be sought, and thus effectually bars the door of justice, the disqualified judge is bound to hear and decide the cause. But, to justify a disqualified judge in sitting in a cause in which he is directly interested, the necessity must be imperative, in the determination of which the greatest care should be exercised."

In said case, as here, there was only one court to which plaintiff could apply for relief. He could not wait until the people provided another tribunal because there was nothing to justify the belief that any such tribunal would ever be created. There was but one course to pursue and that was to go before a court having authority to determine the validity of his demands. In referring to this court as a court having authority to determine the validity of plaintiff's demands, we must bear in mind that while a district court has jurisdiction to issue writs of mandamus, and could have been applied to for such a writ herein, or for a declaratory judgment, it is customary, however, when such a writ is sought for the purpose of requiring a public officer to perform a ministerial act, and which, to be effective, must be performed within a limited period of time, to seek such writ in this court. From any decision of a district court there is an appeal to this court, and considerable time must necessarily elapse before such appeal can be taken and brought on for hearing

in this court. This is but another application of the rule of necessity. Furthermore, district judges are as much disqualified as are justices of the Supreme Court in the instant case, as their salaries are likewise increased by the provisions of Chapter 77, supra.

Nor are we without precedent in this jurisdiction. This court had a similar situation before it in the case of Girard v. Defenbach, 61 Idaho 702, 106 P.2d 1010, wherein it was called upon to pass upon the question of a Constitutional officer being required to file a return and pay a tax on his salary under the provisions of the State Income Tax Law. The court quotes with approval from Evans v. Gore, 253 U. S. 245, 40 S.Ct. 550, 551, 64 L.Ed. 887, 11 A.L.R. 519, as follows:

" 'Because of the individual relation of the members of this court to the question * * * stated, we cannot but regret that its solution falls to us; * * ' *. But jurisdiction of the present case cannot be declined or renounced.' "

In the case of McCoy v. Handlin, supra, it is said:

"It is certainly a novel and startling proposition that, under a constitution vesting the judicial powers of the state in her courts, an inferior executive officer has the right and power to disregard the plain provisions of a statute and refuse to perform a purely ministerial act required of him thereunder, thus depriving another of a property right conferred by such statute * * *."

Having pointed out that it is both our right and duty to act in this matter we shall proceed to consider and determine the ultimate question before us. We do this in the full faith that the people of the state of Idaho will believe that the conclusion at which we arrive will be the honest view of those whom they have placed in a position of trust; and we believe that they will commend us for meeting squarely the issue thus presented, while they could justly condemn us if, moved by personal reasons, we should refuse to uphold the dignity of this court and wrongfully surrender to an executive officer the judicial function of interpreting the laws of this state.

When the members of the Supreme Court submitted their claims to the state auditor for payment of salary as fixed by Chapter 77, supra, it was reasonable to conclude that they had given the matter serious consideration.

The action of the attorney general and state auditor in concluding that the increased salary as fixed by Chapter 77, supra, was not available, but that the salaries of the judiciary were payable as formerly, was erroneous. Section 57-502, I.C.A., the salary law previously in existence, was amended and abrogated by the enactment of Chapter 77, supra, and the judiciary was entitled to pay under the provisions of Chapter 77, supra.

52

■ Inasmuch as we will be construing Constitutional provisions the question may arise as to whether the same rules of construction apply to Constitutional provisions as apply to the construction of statutes. Furthermore, in construing ambiguous or uncertain provisions of the Constitution may proceedings of the Constitutional Convention be referred to in aid of an interpretation of such provisions. In the case of State ex rel. Gleason v. Stewart, Secretary of State, 57 Mont. 397, 188 P. 904, 906, in which an application for a writ of mandamus was sought to compel the Secretary of State to accept and file nominating petitions tendered under the provisions of Senate Bill 32 (Chapter 28, E.S.L.1919), amending primary law enacted by the people at the general election held in November, 1912, and in passing upon the question and after considerable discussion, the court held:

"The same rules apply to the construction of provisions of the Constitution as apply to construction of statutes. State v. Kenney, 11 Mont. 553, 29 P. 89, Dunn v. City of Great Falls, 13 Mont. 58, 31 P. 1017."

In the case of State ex rel. DuFresne v. Leslie et al., 100 Mont. 449, 50 P.2d 959, 963, 101 A.L.R. 1329, it is said:

"It only remains to determine what the Constitution means when it says that no obligation or liability due from any person to the state shall be 'postponed.' In the long line of decisions of this court where it has had under consideration the construction of any law, this phrase has been used: 'Whenever the language of a statute * * * is plain, simple, direct and unambiguous, it does not require construction—it construes itself.' Cruse v. Fischl, 55 Mont. 258, 175 P. 878, and other decisions. 'The rules applicable to the construction of statutes are also applicable to the construction of provisions of the Constitution.' "

In the case of State, Respondent, v. Fite, Appellant, 29 Idaho 463, 159 P. 1183, 1184, construing Constitutional and statutory provisions in the case of a conviction for practicing medicine and surgery without a license and by reason of such construction the judgment of conviction was reversed, and in connection therewith it is said:

"Constitutional provisions and statutory enactments should be read and construed in the light of conditions of affairs and circumstances existing at the time of their adoption. Toncray v. Budge, 14 Idaho 621, 95 P. 26."

Phipps v. Boise Street Car Co., 61 Idaho 740, 107 P.2d 148, 151, wherein it is said:

"The general principles of statutory construction apply to the interpretation of constitutions. 16 C.J.S., Constitutional Law, §§ 15–29, pp. 51–67. 12 C.J. 699–710, § 63."

Idaho Mutual Benefit Ass'n v. Robison, 65 Idaho 793, 154 P.2d 156; Oregon Short Line R. Co. v. Pfost, 53 Idaho 559, 27 P.2d 877, syl. 2, wherein it is said:

"Constitutional provisions should be given practical and reasonable construction of what was probably in the minds of framers."

Williams v. Baldridge, 48 Idaho 618, 284 P. 203, 204, in syllabus 8, says:

"If there is any ambiguity or uncertainty in sections of Constitution, court may look to proceedings of constitutional convention for aid in construction."

In the case of Story v. Richardson, State Treasurer, 186 Cal. 162, 198 P. 1057, 1058, 18 A.L.R. 750, it is said:

"Where terms of a constitutional provision are not entirely free from doubt, they must be interpreted as nearly as possible in consonance with the objects and purposes in contemplation at the time of their adoption. Accordingly it has been held, in aid of the interpretation of such terms, that the court may consider conditions existing prior to and at the time of the adoption of the provision under consideration, the debates in a constitutional convention, and the printed arguments for and against the provision submitted to the people at the polls. Matter of Russell, 163 Cal. 668, 126 P. 875, Ann.Cas.1914A, 152; Older v. Superior Court, 157 Cal. 770, 109 P. 478; Pacific Gas & Electric Co. v. Industrial Acc. Comm., 180 Cal. 497, 501, 181 P. 788. * * * The amendment as adopted was fundamentally the same as that proposed by the commission in its report in 1906, and that report may, therefore, be considered in determining the meaning of doubtful provisions. The commission recommended a separation of the sources of state and county revenue, and that the property of certain 'public utilities' and certain 'other corporations,' namely, banks and insurance companies, be taxed solely for the benefit of the state." See, also, Rasmussen v. Baker, 7 Wyo. 117, 50 P. 819, 38 L.R.A. 773.

In the case of Baumbaugh v. San Diego County, 44 Cal.App.2d 898, 113 P.2d 218, 220, which has to do with the issuance of a writ of mandate and construction of Constitutional provisions, it is said:

"In Helping Hand Home v. San Diego County (26 Cal.App.2d 452, 79 P.2d [778], 781), in speaking on the same subject, it was said: 'And when confronted with the latter situation, particularly in the case of constitutional provisions, the courts may properly resort to the record of debates in legislative bodies or constitutional conventions or to the arguments made to the electors in the submission of propositions for adoption, in order to ascertain which of the alternatives and admissible meanings should be ascribed to the language used. Story v. Richardson, 186 Cal. 162, 198 P. 1057, 18 A.L.R. 750; Yosemite Lumber Co. v. Industrial Acc. Comm., 187 Cal. 774, 204 P. 226, 20 A.L.R. 994; Pasadena University v. Los Angeles County, 190 Cal. 786, 214 P. 868.'"

In the case of Chicago & N. W. R. Co. v. Hall, 46 Wyo. 380, 26 P.2d 1071, 1074,

which construes Constitutional and statutory provisions, it is said:

"Moreover, in case of doubt, the conditions and circumstances existing at the time of the Constitution and the debates in the constitutional convention may be resorted to for elucidation. Story v. Richardson, 186 Cal. 162, 198 P. 1057, 18 A.L.R. 750; State v. District Court, 73 Mont. 541, 237 P. 525; State v. Fite, 29 Idaho 463, 159 P. 1183; Town of Camden v. Fairbanks, Morse & Co., 204 Ala. 112, 86 So. 8."

In the case of Fox-Woodsum Lumber Co. v. Bank of America Nat. Trust & Savings Ass'n et al., 7 Cal.2d 14, 59 P.2d 1019, 1022, in which the Court in construing Constitutional provisions resorts to proceedings of the Constitutional Convention and in which, among other things, it is said:

"It was apparently the intent of the framers of the Constitution that section 15 of article 12 was to be a prohibition against the Legislature and not, in effect, self-executing, for as originally introduced the provision required the Legislature to enact laws to enforce its terms. However, this latter provision was eliminated solely because it was repetitious and made unnecessary by the general provision to the same effect contained in section 24 of the same article. 3 California Constitutional Convention, 1217. That the constitutional debates may be considered as an aid in finding the intent of the instrument, is well settled. Older v. Superior Court, 157 Cal. 770, 776, 109 P. 478; Story v. Richardson, 186 Cal. 162, 165, 198 P. 1057, 18 A.L.R. 750." See, also, Shafer v. Registered Pharmacists Union Local, Cal., 106 P.2d 403, 405; American Trust Co. v. California-Western States Life Ins. Co., Cal.App., 76 P.2d 201.

In the case of Davis v. Hart, 123 Cal. 384, 55 P. 1060, 1061, it is said:

"A cardinal rule of interpretation is that a statute free from ambiguity and uncertainty needs no interpretation. This must be so, for all interpretation and construction is for the purpose of ascertaining the legislative will. When this is clear, interpretation is not allowable. In such case it cannot be argued that the result is unjust or against policy. It is itself conclusive upon these subjects. True, the literal sense will not always prevail. But, even in such cases some ambiguity must be found in the statute itself." See, also Beneficial Loan Society, Ltd., v. Haight, Com'r of Corporations, 215 Cal. 506, 11 P.2d 857; Bearden v. Collins, 220 Cal. 759, 32 P.2d 604.

The case of Older v. Superior Court, 157 Cal. 770, 109 P. 478, 480, details proceedings in Constitutional Convention, such as proposed amendments, discussions incident thereto, rulings of the chairman, arguments and the recording of votes for and against matters before the convention. It is so lengthy that we must be content by one short quotation, as follows:

"As was well said in the opinion in the case of the People v. Stephens, 62 Cal. [209], 233, all the provisions of the Constitution 'must receive a practical common-sense construction. They must be considered with reference to the prior state of the law, and with reference to the mischief intended to be remedied by the change.' In aid of this canon of interpretation, we may also examine the debates which occurred at the time of the adoption of the part of the Constitution under analysis, and learn from the statements of the Constitution makers themselves, if possible, their purposes and intentions."

House Bill Number 184, Session Laws 1907, p. 465, approved March 14, 1907, increased the salaries of executive and judicial officers. Section 2 of said act is identical with Section 57-502, I.C.A., prior to amendment by Chapter 77, supra. The case of Woods et al. v. Bragaw, as State Auditor, 13 Idaho 607, 92 P. 576, 577, discloses that the district judges of the several districts of the state sought a writ of mandamus to compel the auditor to draw warrants in favor of plaintiffs for the quarter ending June 30, 1907, in payment of salary at the rate of $4000 per annum from and after May 8, 1907. The defendant demurred to the application. "The only question presented for decision is: Does the act approved March 14, 1907, raising the salary of district judges from $3,000 per annum to $4,000 per annum, apply to the judges in office at the time the act became a law, to wit, May 8, 1907. The plaintiffs

were elected at the general election held throughout the state on the 6th day of November, 1906, and qualified and entered upon the duties of their respective offices on the first Monday of January, 1907, and were such judges at the time of filing the complaint, the term being four years." (Ailshie, C. J., did not sit at the hearing or participate in the opinion.)

The case then shows:

"Article 5, § 17, of the Constitution, provides: 'The salary of the judges of the district court, until otherwise provided by the Legislature, shall be $3,000 each per annum.' This section contains no provision as to raising or lowering salaries.

"Article 5, § 27, of the Constitution, provides: 'The Legislature may, by law, diminish or increase the compensation of any or all of the foregoing officers, to wit: * * * judges of the district court, * * * but no diminution or increase shall affect the compensation of the officer then in office during his term.'" (Justices of the Supreme Court are included in the above section.)

The decision points out that the inhibition as to raising or decreasing salaries contained in Section 19, Article IV, relates to executive officers only, while the inhibition found in Section 27, Article V, relates to both executive and judicial officers. It is also disclosed from said decision that it was intended by Section 17 of Article V, and Section 19 of Article IV, "to fix a salary which should be the compensation of

such officers until the Legislature provided otherwise; but neither of these sections in any way change or modify article 5, § 27. The latter grants to the Legislature power to diminish or increase the salary of the officers named therein, but prohibits an increase from affecting the compensation of the officer then in office. The provisions of article 5, § 27, are too plain to call for technical construction." It is also pointed out that there is nothing in the act that shows that the legislature intended to overlook the general prohibition found in Section 27, Article V, against increasing the compensation of judicial as well as executive officers. "But, had the Legislature intended that the act in question should apply to the officials then in office, it is not probable that they would have overlooked an appropriation to pay such increase."

The court, in Woods v. Bragaw, supra, denied the writ on two grounds, (a) that the increase was not available to a Constitutional officer in office at the time the law making the increase became effective, and (b) that there was no appropriation to pay the increase in salary.

Since the date of the decision in the Woods-Bragaw case, this court has had occasion to pass upon the question of the payment of the salary of a Constitutional officer when no appropriation for the payment thereof had been made. Paragraph III of Points and Authorities says: "The failure of the 1945 legislature to appropriate money sufficient to pay increased salary presently shows an intent that such increases should not be presently effective." Chapter 201, 1945 Session Laws, and Woods v. Bragaw, supra, are cited. The chapter is the general appropriation act and we have just quoted from the Bragaw case. Under date of February 3, 1937, the then attorney general (J. W. Taylor) gave a comprehensive opinion to Harry C. Parsons, State Auditor, incident to the office of commissioner of immigration, labor and statistics, and in his request for the opinion the state auditor asked if said commissioner could "be paid out of the state treasury without a specific appropriation". In giving his opinion the attorney general advised that the particular question was before this court in the case of Reed v. Huston, 24 Idaho, 26, 132 P. 109, 110, Ann.Cas.1915A, 1237, and quoted therefrom as follows:

"'From the foregoing provisions it will be seen that we have, first, a constitutional office; second, the salary fixed for that office by the Legislature; and, third, a statute directing the payment of all salaries of state and district officers "out of any money in the treasury not otherwise appropriated"; and, lastly, a provision requiring the auditor to draw his warrant for salaries fixed by law against any unexhausted appropriation made therefor. This would seem to be as clearly an appropriation for salaries of state and district officers as could well be made.'

"That is exactly the situation at the present time. There was a commissioner appointed, which is a constitutional office.

His salary was fixed by the Constitution and the proviso for the payment of salaries of state officials is still the law. Further, in passing upon this particular situation the court said:

" 'In other words, any money that may be in the treasury at the time the salary becomes due,which is not at the time appropriated by the Constitution or acts of the Legislature to some other use or purpose, is clearly "not otherwise appropriated," and is therefore available and "appropriated" by this act to the payment of the salaries designated [and enumerated].'

"The court further said:

" 'Keeping in view the reasoning of the courts of the several states on this question and applying the rest of the rule to the provisions of our Constitution and statute above set out, we have no doubt of the right of the plaintiff to have a salary warrant issued to him by the auditor when the same falls due, and to have it paid "out of any money in the treasury not otherwise appropriated" '.

" * * * This case, in my opinion, is conclusive on the question above submitted and the auditor could be compelled, by appropriate proceedings, to issue the warrant for the salary of the commissioner, the same being a legal charge and the court has construed the law to the end that the appropriation has been made and that there are funds in the treasury for the payment of same."

The foregoing opinion has not been modified or overruled.

The remaining proposition, i. e., that an increase in compensation (Section 27, Article V) is not available to an officer then in office during the term, while not more difficult, requires considerably more time and explanation. The 1945 legislature, Chapter 131, fixed the salaries of executive officers by increasing the salary of the state superintendent of public instruction. These officers come within the provisions of Section 27, Article V, supra, as well as Section 19, Article IV, which provided salaries for executive officers. Section 2 of said act is as follows:

"Section 2. *This act shall become effective on the first Monday of January, 1947.*"

If the legislature considered judicial officers were governed by the same rule as executive officers, it would seem a similar prohibition would have been included in Chapter 77, supra, as was included in Chapter 131, by fixing a definite date when the increase would become effective.

It has heretofore been mentioned that Mr. Reid was chairman of the salary committee of the Constitutional Convention; that the provisions of a constitution are construed by the same rules as statutes; and that proceedings of such convention may be examined by courts in arriving at a determination on any question.

Referring to the Constitutional Convention proceedings in aid of a determination as to what effect, if any, the provisions of Section 27, Article. V, supra, have upon the provisions of Chapter 77, supra, increasing

the salaries of judicial officers, we submit the following:

"Excerpt from Idaho Constitutional Convention Proceedings, Volume II, Article V, page 1583:

"Mr. Reid. I move the following section, and that will dispose of the salary bill. It just applies to those features in the salary bill, matters that are virtually agreed on, and by inserting it here, will prevent the insertion of another article in the constitution.

"'Section 27 * * * Section 31. The legislature may by law diminish or increase the compensation of any or all of the following officers, to-wit:. Governor, lieutenant-governor, secretary of state, state auditor, state treasurer, attorney general, superintendent of public instruction and district attorneys, but no diminution or increase shall affect the compensation of the officer then in office during his term; Provided, however, That the legislature may provide for the payment of actual and necessary expenses of the governor, and the secretary of state, attorney general, and superintendent of public instruction incurred while in performance of official duty.'

"Mr. Reid. I have copied this from the report of the committee on Salaries and named the officers named in the salary bill.

"Mr. Claggett. You haven't district judges.

"Mr. Reid. Well, I will ask to have the secretary insert district judges before district attorneys.

"Mr. Shoup. The salary of the superintendent of immigration is not put in there.

"Mr. Reid. We intended to put that in the labor article. It might, however, go in here.

"Mr. Wilson. I would suggest that you allow the legislature, if it sees fit, to provide for the payment of expenses of district judges, supreme court judges and district attorneys.

"Mr. Reid. Well, I am putting in what the convention virtually agreed on the other day. I think their salary covers that. The others are stationary.

"The Chair. The question is on the adoption of the section offered by the gentleman from Nez Perce.

"Mr. Wilson. I move the amendment, that judges of the supreme court, district judges and district attorneys be included in this list of officers that the legislature may provide for their expenses. How does it read as now amended?

"Secretary reads: 'The legislature may by law diminish or increase the compensation of any or all of the following officers, to-wit: Governor, lieutenant-governor, secretary of state, state auditor, state treasurer, attorney general, superintendent of public instruction, justices of the supreme court, and district attorneys, but no diminution or increase shall affect the compensation of the officer then in office during his term; Provided, however, That the legislature may provide for the payment of actual and

necessary expenses of the governor, secretary of state, attorney general and superintendent of public instruction incurred while in performance of official duty.'

"Mr. Reid. I will ask to add after 'superintendent of public instruction' where it first occurs, 'commissioner of labor and immigration.'

"Mr. Wilson. I move to add the words 'supreme court judges, district judges, and district attorneys' to the list of executive officers.

"Mr. Parker. Mr. President, I have a substitute.

"Secretary reads: 'Section 31; substitute for the amendment: The compensation of all officers not otherwise provided for in this constitution shall be prescribed by law. Salaries shall be paid quarterly.'

"The question was put by the chair. (Lost.)

"Mr. Morgan. I think that ought to be added as an amendment to the section.

"Mr. Ainslie. The legislature can make those salaries payable quarterly without putting it in the constitution.

"The Chair. Now, if you will state your amendment, Mr. Wilson, the chair will entertain it.

"Mr. Wilson. I want to add after the executive officers—

"The Secretary. You want to provide for the traveling expenses of the judges and—

"Mr. Reid. Well, the reason the Salary committee—

"The Chair. I think we had better get the amendment first.

"Mr. Reid. We can argue it while he is writing it, Mr. President. The reason we fixed the salary, for instance, of the governor at $2,500, he is stationary; we provide him with expenses provided he does have to travel.

"Mr. Mayhew. What is the question before the body?

"Mr. Reid. The gentleman moved an amendment that whenever the legislature sees fit it may provide for traveling expenses additional to salaries. I am opposed to it. We give the judges $3,000 and the district attorneys $2,500, and that is intended to include traveling expenses and all costs. Suppose you give the judges their traveling expenses. A judge's salary might run up to $4,000 or $5,000, and the district attorney's salary might run up to that. Why do we give traveling expenses to the governor, superintendent of public instruction, and attorney general? Because at some time they may be called off in a distant part of the state to look after the state's interests; and their salary is fixed upon the idea that they remain stationary. It is not contemplated that they have to go elsewhere, except the superintendent of public instruction; but if they should, we provide their actual and necessary expenses therefor, and we fix their salary upon the stationary basis. Now, as to the judges

and district attorneys. When we fixed their salaries we took into consideration that they would have to travel around three or four counties, and we gave them $3,000 in view of that fact.

"Mr. Mayhew. Don't you think it would be proper to give them mileage?

"Mr. Reid. No sir, I would object to anything but a salary because I think $2,500 will cover it.

"Mr. Mayhew. I think the judges should have it.

"The Chair. Gentlemen, come to order and the secretary will read the amendment offered.

"The Secretary. 'Supreme court judges, district judges and district attorneys'— where do you want it inserted?

"Mr. Wilson. In the section; that is the idea.

"The Secretary. I will insert it after superintendent of public instruction.

"Mr. Mayhew. I desire to make an amendment, and you can argue it, to strike out district attorneys.

"Mr. Wilson. All right. I will consent to that. There is no reason in the world why executive officers should be preferred to judicial officers in this matter. We are leaving the whole matter to the legislature, and if this section was not in there at all I think the legislature would have that power. We have provided for their salaries, and no doubt the legislature could provide for their traveling expenses as well without that section being in there; but while it is in there I would put it in for the whole business. That is, for the legislature to provide if they saw fit.

"Mr. Reid. I just call attention of the delegates to the fact that when you come to pay mileage to the governor and other officers, their mileage will be as much as their salary, if not a little more.

"Mr. Claggett. If that is so, then under the provisions of the constitution they would not get any salary at all. After you deduct what it will cost them to travel around, according to the theory of the gentleman from Nez Perce, they would have nothing left. So far as the judges of the district courts are concerned, I for one voted to fix their salaries at $3,000, because I wanted them to get that much money for their services, and as to their actual expenses, I think it ought to be paid.

"Mr. Reid. There is just one reply to that. Mileage allowed me to come to this convention is for 1124 miles, if I can get it.

"Mr. Mayhew. Yell, you are not going to get it.

"Mr. Reid. Ten cents both ways, which would be about $200, and I can get here and get back for $45. The legislature will fix it at ten or twenty cents both ways.

"Mr. Morgan. I presume if you allow the legislature to provide for the expenses of these officers it is not necessary for them to get that mileage. They may provide a gross sum, any amount you see fit. They have already provided for expenses of the

judges of the district in this territory by giving them $100 in each county, where they hold court, excepting the county where they reside, and they can provide a gross sum, just as well as to provide mileage.

"Mr. Reid. Yes, we have saved $3,000 on the district attorney's office. Now let's spend it.

"Mr. Pinkham. I wish to amend the section in this manner; 'Provided, any judge of the supreme court or district attorney, who is riding upon a pass, over railroads in this country in the discharge of official duties, the amount of mileage, which they are obliged to be paid at that time be deducted from their salaries'; which would be consistent with their vote the other day.

"Mr. Wilson. The only objection I have to that in my mind, it does not provide for any mileage for district attorneys at all; and if he—

"The Chair. The amendment is not supported, and we need not spend time on it. The question is on the amendment offered by Mr. Wilson, to the effect that the legislature have authority to provide for the expenses of justices of the supreme court and district judges.

"The vote was taken, and the chair being in doubt a rising vote was taken which resulted: Yeas 7; nays 25.

"Upon the adoption of the original section offered by Mr. Reid, a viva voce vote was taken and division demanded. Upon the rising vote the result was: Yeas 26; nays 4; and the section was adopted.

"Mr. Heyburn. Mr. Chairman, I now move that the article as a whole be adopted. (Seconded.)

"The motion was put by the chair. (Carried.)"

All the convention proceedings relative to the inclusion of justices and judges within Section 27, supra, are included herein so as to dispel any inaccuracies that may be urged incident to the contents of such proceedings. Whatever may have induced Mr. Reid to offer Section 27, supra, as a part of Article V, it conclusively shows from the proceedings that it was not for the purpose of including any portion of the judiciary, as he highly opposed any such inclusion for any purpose.

Prior to the time of the motion by Mr. Reid for the adoption of Section 27, supra, the Convention had discussed and debated the amount of salary that should be paid state elective officers. The salary committee had agreed upon the sum of $2,500 as the salary for justices of the Supreme Court and district court judges, and in that connection actual and necessary expenses of such officials were to be paid from their salaries. When Section 17, Article V, supra, came before the Convention from the salary committee for adoption, the proceedings (page 1572) show:

"Section 19 (17) read and it is moved and seconded that it be adopted:

"Mr. Heyburn. I have an amendment pertaining to the salary of justices.

"Secretary reads: Amend Section 19 (17) by inserting before the first words the

following: "The salary of the judges of the supreme court, until otherwise provided by the legislature, shall be $4,000 per annum, and the salaries of the judges of the district court, until otherwise provided by the legislature, shall be $4,000 per annum, and * * *'

"Mr. Mayhew. I move that it be adopted.

"Mr. Reid. I move to amend that by striking out 'four' and inserting 'three' * * *

"The Chair. The question is now on the amendment as amended, the effect of which is that the judges and justices shall each receive a salary of $3,000 per annum. (Put to vote and carried.)

"Moved and seconded that Section 19 (17) as amended be adopted. (Put to vote and carried.)"

It was on account of former action fixing the salaries of justices and judges that Mr. Reid so strenuously opposed the proposed amendment of Mr. Wilson that the "traveling expenses" of justices and judges be provided for them the same as for the governor and others of the executive officers, and it was for that reason that Mr. Reid said:

"The gentleman moved an amendment that whenever the legislature sees fit it may provide for the traveling expenses additional to salaries. I am opposed to it. We give the judges $3,000 and the district attorneys $2,500, and that is intended to include traveling expenses and all costs."

The convention which framed the Constitution had among its members many of the most prominent lawyers of the territory. From its members were later elected senators, governors, justices and judges, and it is to be assumed that the convention had before it the constitutions of various of the several states, and it must be presumed that it was drafted with care and precision in the use of language and with a full understanding of the accepted meaning of every word used therein. In each instance where a state constitution has a restraint or inhibition against the increase of salary of an elective state officer, insofar as I am able to find, the restraint or inhibition was included in the section of the Constitution providing for such salary. Observe the restraints and inhibitions contained in Section 19, Article IV, supra, which provides for the salaries of executive officers. If the Convention intended that any restraints or inhibitions were to be effective against justices and judges it is quite likely the same would have been included in Section 17, supra, in fixing their salaries.

The attempt of Mr. Wilson to include justices and judges in Section 27, Article V, supra, for the purpose of securing to them traveling expenses only, failed to carry and was not adopted. Thus, at the time Mr. Heyburn "moved that the article as a whole be adopted", which motion was seconded and was put by the chairman and carried, the status of said Section 27, Arti-

cle V, supra, was precisely the same as it was at the time Mr. Reid moved the adoption thereof when justices of the supreme court and district judges were not included therein.

From the state of the record of the Constitutional Convention would anyone have the temerity to seriously contend that Section 27, Article V, supra, was amended by the proposal to include justices and judges, when it is conclusively shown said proposed amendment was defeated by an overwhelming majority and the original motion offered by Mr. Reid and not including justices and judges carried overwhelmingly, and the article as a whole was adopted and all matters pertaining to salaries and expenses terminated and closed.

In Paragraph V, Points and Authorities, the Attorney General cites Scribner v. State, 9 Okl.Cr. 465, 132 P. 933, Ann.Cas. 1915B, 381, a criminal case construing rights of a witness, and says:

"The meaning of a constitution, the intent to be arrived at by the courts, is that of the people who adopted it, not that of the convention which drafted and proposed it."

This is a very strained statement when compared with the quotation from said case at page 9 of the brief. Marshall, C. J., Gibbons v. Ogden, 9 Wheat. 1, 188, 6 L.Ed. 23, is also quoted in said case, and a brief quotation therefrom plainly indicates what point he, as well as the author of the above decision, was striving to make, to-wit: "The framers of the Constitution, and the people who adopted it, must be understood to have employed words in their natural sense, and to have intended what they have said." [9 Okl.Cr. 465, 132 P. 934]

To get the rule applicable to the construction of our Constitution it is not necessary to go into other jurisdictions as it has been repeatedly announced in this jurisdiction. In the case of Grice v. Clearwater Timber Co., 20 Idaho 70, 117 P. 112, Syl. 6, it is said:

"In construing the provisions of the Constitution, it should be construed in such a way as to give the Constitution practical effect according to the intention of the body that framed it and the people who adopted it." Fletcher v. Gifford, 20 Idaho 18, 115 P. 824.

See, also, Oregon Short Line R. Co. v. Pfost, supra, quoted at page 8 of the brief.

In quoting from Hockett v. State Liquor Licensing Board, 91 Ohio St. 176, 110 N.E. 485, 486, L.R.A.1917B, 7, at page 9 of defendants' brief, it is said:

"The polestar in the construction of Constitutions * * * is the intention of the makers and adopters."

The above quotation is taken from a case construing proposed constitutional amendments under an initiative and referendum law, wherein the people were both the makers and adopters of such amendments as proposed, adopted or rejected under the same.

Heretofore we observed, in discussing the Woods-Bragaw case, that the proposition of an increase in compensation, as mentioned therein, presented a more difficult problem than did that of the lack of a legislative appropriation. In this connection we invite attention to the fact that the proceedings of the Constitutional Convention which we have quoted had not, at the time of the decision of the Woods-Bragaw case, been transcribed and published. Had these facts been known to the author of the Woods-Bragaw opinion, it is quite certain that the decision in said case as written would have been different.

 On May 16, 1945, the state auditor submitted to the attorney general the question following: "What is the statutory salary for the month of May for the justices of the Supreme Court?" May 29, 1945, the attorney general rendered his opinion (Exhibit "A" of Application), in which he held that the Woods-Bragaw case "concluded that the Constitution absolutely bars the application of a law (Chapter 77) increasing the salaries of our judges during the terms of such officers in office when the law goes into effect." He did not tell the state auditor, in said opinion, that when Section 27 was originally moved for adoption that the judges were not included therein; that the whole discussion was limited to expenses for said judges; that the proposed amendment to secure expenses for judges was defeated, and that the motion for the adoption of the original section which did not include the judges carried and was adopted. Neither did he mention therein that the Convention proceedings were not transcribed and published until long after the Woods-Bragaw decision. Paragraph II of his points and authorities state: "The rule of Woods v. Bragaw should be followed under the doctrine of stare decisis," and cites Scott v. Gossett, Idaho, 158 P.2d 804, 807. The rule, *to stand by decided cases, and to maintain former adjudications,* contemplates more than blindly following some former adjudication, manifestly wrong. If it were to be applied strictly, no former decision would ever be overruled. In the instant case the mistake or error in including justices and judges within Section 27, supra, is so plain and palpable that to hold otherwise would do violence to the record. That the restriction as to judges was authoritatively in the Constitution, is to paraphrase the statement in Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 823, 82 L.Ed. 1188, 114 A.L.R. 1487, by Justice Brandeis, quoting from Justice Holmes: " * * * *an unconstitutional assumption * * * which no lapse of time or respectable array of opinion should make us hesitate to correct."* (Emphasis ours.)

 Independent of anything that may be said relative to the restraints or inhibitions of Section 27, supra, the Convention proceedings conclusively show that the only reason behind the attempt of Mr. Wilson and a few other delegates to include justices and judges in said section was for the sole and only purpose of securing to them

their actual and necessary "traveling expenses." It is through that source and that alone that any inclusion therein of judicial officers was attempted. The attempted inclusion for the purpose sought was defeated, as the proceedings show, so that leaving the names of judicial officers within Section 27, supra, after the proposed amendment by Mr. Wilson was defeated, either previous to or below the proviso, or at all, was an inadvertence and mistake, and properly should have been deleted.

 Everyone knows the Constitution as originally compiled was prepared and constructed by the delegates of the Convention. The people had nothing to do with the contents thereof. Their function was ratification or rejection of what the delegates submitted. Everything contained in the Constitution must needs have been approved and adopted by the Convention. Spurious matter would be a nullity, regardless of the fact that it was submitted and to all outward appearances ratified. Nothing could be more spurious than the provision including justices and judges in Section 27 previous to the proviso in view of the action of the Convention and the state of the record. Very few legislatures convene without passing Joint Resolutions proposing amendments to the Constitution, and it is not infrequent that the courts, after ratification by the people, for some cause or another have held certain proposed amendments void. If the proceedings of the Convention had never been transcribed or published and no record thereof made available, then, of course, it could be urged consistently that justices and judges, as judicial officers, were included in Section 27, supra.

In the case of Lane v. Lukens, 48 Idaho 517, 283 P. 532, involving the validity of a Constitutional amendment submitted to and ratified by the people, the author quotes from McBee v. Brady, 15 Idaho 761, 100 P. 97, as follows [48 Idaho 517, 283 P. 533]:

" 'The questions submitted should be the same questions proposed as the amendment or amendments. The Legislature cannot propose one question and submit to the voters another.' That is just what was done here. The amendment is accordingly void."

 There had to be some foundation for the inclusion of justices and judges within Section 27, supra, and when the amendment offered by Mr. Wilson failed, then, regardless of what the section later stated, such inadvertently included portion was a nullity.

Not only does the record show that the proposed amendment which sought to provide for expenses of judicial officers failed of adoption by an overwhelming vote, but it also shows that upon the adoption of the original section offered by Mr. Reid, a viva voce vote was taken and division demanded. "Upon the rising vote the result was: Yeas 26; nays 4; and the section was adopted." Thus we have checks on the proposition: (1) A showing that the proposed amendment to include judicial officers in Section 27, supra failed; (2) the

adoption of the original section offered by Mr. Reid, and (3) the adoption of Article V as a whole, and the Convention was then discharged from further consideration of the report of the committee on salaries of public officers.

We have heretofore shown that the same rule of construction applicable to statutory provisions is likewise applicable in the construction of constitutions. Among other questions urged by the plaintiff is that of the equal protection clause under the Fourteenth Amendment to the Federal Constitution. There is merit in plaintiff's contention, but since it is the unanimous opinion of this court that justices of the Supreme Court and district court judges were not included in Section 27, supra, it becomes unnecessary to pass upon the question of the application of the equal protection clause of the Fourteenth Amendment.

Undoubtedly the reason why the prohibition as to justices was not intended to be included was because the justices of the Supreme Court have staggered terms, hence the increases if deferred for the consecutive terms would be unequal and inequitable.

 In support of the proposition that it was never contemplated by the Constitution or legislature that there should be restraints and inhibitions against the payment of increases in the salary of judicial officers immediately upon the effective date of any such enactment, we submit: (a) That Section 17, Article V, supra, provid-

ing salaries of justices and judges, contains no restraints or inhibitions, while Section 19, Article IV, supra, providing the salaries of executive officers, contains restraints and inhibitions; (b) that Chapter 77, 1945 Session Laws, increasing salaries of justices and judges, fixes no date when the increases become effective other than when the act becomes a law, while Chapter 131, 1945 Session Laws, increasing the salaries of executive officers fixes an effective date when the increase becomes payable, and by Section 2 thereof provides: *"This Act shall become effective on the first Monday of January, 1947,"* and in accordance with Section 19, Article IV, supra; (c) that justices and judges were inadvertently included in Section 27, supra, and contrary to the proceedings of the Constitutional Convention; (d) that the proceedings in Constitutional Convention were not transcribed and made available until 1912; (e) that the decision in the case of Woods v. Bragaw, supra, was rendered long prior to the transcription of the Constitutional Convention proceedings and when, to all intents and purposes, justices and judges were included with executive officers in Section 27, supra, and that said decision is not applicable to judicial officers.

 Accordingly, we hold that Chapter 77, Session Laws 1945, increased the salaries of judicial officers, and that such increase became effective and was payable from and after May 8, 1945; that the payroll of the justices of the Supreme Court presented to and filed with the defendant, Ernest G. Hansen, State Auditor,

and by him rejected, was in proper form; that it was the duty of said state auditor to issue warrants including the increased amount of salaries as provided by Chapter 77, Session Laws 1945; that the proper and adequate remedy to enforce performance of this ministerial act is by and through a writ of mandamus as demanded by plaintiff.

It is, therefore, ordered that a peremptory writ of mandamus issue forthwith requiring defendant, Ernest G. Hansen, State Auditor, to immediately issue state warrants for the increased salaries now due and payable, as provided by Chapter 77, Session Laws 1945, and as indicated herein, and that defendant, Ruth G. Moon, State Treasurer, pay such warrants when properly endorsed and presented. Costs to plaintiff.

AILSHIE, C. J., and BUDGE, GIVENS, and HOLDEN, JJ., concur.